(Nos. 40386, 42521, 43126 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* CHARLES STANSBERRY, Appellant.—SAME, Appellee, *vs.* JAMES HARVEY, Appellant.—SAME, Appellee, *vs.* LONNIE HATCH, Appellant.

*Opinion filed January 25, 1971.—Rehearing denied March 31, 1971.*

542

SCHAEFER, J., dissenting.

SAM ADAM, EDWARD M. GENSON, KERMIT COLEMAN, and BRUCE L. BOWER, all of Chicago, appointed by the court, for appellants.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ROBERT A. NOVELLE, and ARTHUR L. BELKIND, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

On separately docketed direct appeals to this court, these cases have been consolidated because there is a similarity of facts and similar application of a legal principle. Defendants Charles Stansberry and Lonnie Hatch were found guilty in the circuit court of Cook County of the crime of illegal possession of heroin, a narcotic drug. They were convicted in a bench trial and sentenced to the penitentiary for terms of not less than two nor more than four years, and not less than two nor more than two years and a day respectively. After a jury trial, defendant James Harvey was found guilty in the circuit court of Cook County of the crime of possession of marijuana, a narcotic drug, and sentenced to the penitentiary for a term of not less than two nor more than five years.

Each defendant contends that his constitutional rights were violated by the refusal of the trial court to quash the search warrants and suppress the incriminating evidence produced by the execution of said warrants. It is argued that the allegations of the complaints which led to the finding of probable cause by a judicial officer in the first instance were false and fraudulent and that they should have a right to controvert those allegations. In addition, each defendant contends that a warrant issued pursuant to an affidavit signed with a false or fictitious name is void.

We have recently had occasion to consider the first question posed and have held that there is no constitutional or statutory right to controvert the matters declared under oath which occasioned the finding of probable cause and

the issuance of a search warrant by a judicial officer. (*People* v. *Mitchell,* 45 Ill.2d 148; *People* v. *Bak,* 45 Ill.2d 140, *cert.* denied, October 26, 1970, 91 S. Ct. 117.) We have likewise been urged, as we are in these cases, to reconsider the *Bak-Mitchell* decisions and we have declined to do so. (*People* v. *Nakon,* 46 Ill.2d 561.) Once again we find no reason to change our opinion and, based on the reasoning of the above cases, we find that the trial court properly refused to permit defendants to challenge the truth of the affidavits upon which the finding of probable cause was based.

In support of their contention that the search warrants were void, defendants cite *United States ex rel. Pugh* v. *Pate* (7th cir. 1968), 401 F.2d 6, holding that a warrant issued pursuant to an affidavit signed with a false or fictitious name is void. Contrary to this finding we have previously held that the use of a fictitious name by an affiant to a search warrant does not constitute a violation of a defendant's constitutional rights. (*People* v. *Mack,* 12 Ill.2d 151; *People* v. *Smith,* 40 Ill.2d 501.) The question thus presented is whether the *Pugh* case has any binding effect on this court when the issue has not been passed on by the United States Supreme Court. We find the question to be an elusive one though it is discussed generally in an annotation in 147 A.L.R. 857 and in 21 C.J.S. Courts, sec. 206. These references indicate a lack of unanimity among the several States with the majority favoring the rule that such decisions should have no binding effect until the issue is considered and determined by the Supreme Court. This would appear to be the most logical conclusion, for oftentimes there is a conflict between decisions of the various Federal courts on constitutional matters and until finally determined by the United States Supreme Court there can be no definitive ruling by which a State court can be bound. (See: *Lawrence* v. *Woods* (7th cir.), 432 F.2d 1072, (8 Cr. Law Rptr. 2084.) For instance, on the question first posed in this

opinion some lower Federal courts have held that a defendant is not entitled to inquire behind a search warrant and the affidavit supporting it, (*Kenney* v. *United States* (D.C. cir.), 157 F.2d 442; *United States* v. *Gianaris* (D.C.D.C.) 25 F.R.D. 194) whereas the contrary view is expressed in *United States* v. *Suarez* (2d cir.), 380 F.2d 713; *United States* v. *Gillette* (2d cir.), 383 F.2d 843; *United States* v. *Roth* (7th cir.), 391 F.2d 507. And the United States Supreme Court has not yet ruled upon the question. (*Rugendorf* v. *United States,* 376 U.S. 528, 11 L. Ed. 2d 887, 84 S. Ct. 825.) Under such circumstances decisions of the lower Federal courts can be held to be no more than persuasive and certainly not binding on State courts.

Following our previous decisions in *People* v. *Mack,* 12 Ill.2d 151, and *People* v. *Smith,* 40 Ill.2d 501, we reaffirm that the use of a fictitious name by an affiant to a search warrant does not constitute an abridgment of constitutional rights. *People* v. *O'Kiersey,* 46 Ill.2d 198.

We shall now discuss the additional points raised by defendants Hatch and Harvey.

Hatch contends that the police officers did not file and docket the search warrant until after it was served and he was arrested. This procedure admittedly was in compliance with section 108—4 of the Code of Criminal Procedure (Ill. Rev. Stat. 1969, ch. 38, par. 108—4) which provides in part that a complaint upon which a warrant is issued need not be filed with the clerk until the warrant has been executed or has been returned "not executed". He argues that the statute itself is unconstitutional because it permits and "encourages uncontrolled and unsupervised police harassment and intrusion upon a citizen in his home," and affords no remedy to the innocent in whose home nothing incriminating is found. Such argument ignores the fact that before a warrant is issued a written complaint must be submitted to a judicial officer, as in this case, which states facts sufficient to show probable cause and particularly describes

the place or person to be searched and the items to be seized. The purpose of the statute questioned is as stated in the Committee Comments, "* * * to enhance the law enforcement process by providing for a lack of public knowledge concerning the warrant until it has been executed." (S.H.A. ch. 38, § 108—4.) We find no constitutional objection to exercising such precautions as may be necessary to forestall the possibility of one obtaining foreknowledge of an impending search. See: *People* v. *Price*, 46 Ill.2d 209.

Harvey contends that the police wrongfully delayed one day after issuance of the warrant before executing it in order to inculpate him for the offense, that a statement of his was improperly admitted into evidence when admittedly he had not previously been warned of his constitutional rights, that the trial court erred in not forcing the State to produce the affiant on the complaint for a search warrant at the trial, that he was not proved guilty beyond a reasonable doubt, and that his sentence was excessive.

The search warrant was issued on October 28, 1967, and provided for a search of the person and the premises at the headquarters of the Afro-American Student Association, located at 3856 S. Parkway in Chicago. It was not served until the next day, October 29, because the police had learned that Harvey was not present at the Association office but that he was expected the next day. When the police did approach the office they were met by a young lady, and upon identifying themselves, they were admitted. According to the police the warrant was presented to Harvey and he read it in the presence of four other men. The officers, accompanied by Harvey, searched the premises consisting of three small rooms. In one of the rooms they found boxes and bags of old, dirty clothes and shoes and on the wall, hanging on hangers, a trench coat and several clean shirts. They testified that they asked Harvey whether the trench coat and clean shirts were his and he stated that they were. He was also asked about the clothing in the boxes on the

floor and he said that it belonged to him too. The police then searched all the clothing and in the pocket of the trench coat found five small brown envelopes containing the marijuana in question. Upon showing Harvey the marijuana they placed him under arrest and took him and the other individuals present to the police station.

Harvey testified that he was a member of the Association and that the clothing in question was being collected by the Association members in a clothing and fund drive. He stated that when the officers entered they identified themselves, asked everyone to have a seat, and presented him with the warrant which he read. He was not told he was under arrest but he said he thought he was treated as if he were. He was not told that he was free to go. He denied stating that the trench coat belonged to him and stated it was a small lady's coat which had been collected in the drive. He stated that before the police said they found the marijuana he had responded to their questions about the clothes but only to the effect that he was responsible for all of them as co-ordinator of the drive.

The officers testified that the coat looked to be about Harvey's size but it was not inventoried and its whereabouts at the time of trial was unknown, and that Harvey did not wear a coat to the police station. Pictures were introduced showing him without a coat at the station and the others with different types of outer apparel. Harvey stated that he wore a coat to the station but had left it in his cell when the pictures were taken.

From these facts we find that the execution of the search warrant was in compliance with section 108—6 of the Code of Criminal Procedure (Ill. Rev. Stat., 1969, ch. 38, par. 108—6) which provides that warrants shall be executed within 96 hours from the time of issuance. The warrant called for a search of the person as well as a search of the premises, so that delay until the officers were sure Harvey would be present, was justified.

Defendant Harvey contends that he was not advised of his constitutional rights before he made incriminating statements as required by *Miranda* v. *Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S.Ct. 1602. The question is whether the statement of Harvey relative to the trench coat arose out of custodial interrogation. "The *sine qua non* for invoking the *Miranda* rule is that the interrogation be focused on the accused while he is 'taken into custody or otherwise deprived of his freedom of action [by authorities] in any significant way.' 384 U.S. at 444, 16 L.Ed. 2d at 706, 86 S.Ct. 1602." (*People* v. *Fischetti, ante,* p. 92.) Here upon entry, the police, according to Harvey's own testimony, asked those present to be seated, presented the warrant to him, and then after he had read it and before conducting the search they made the normal and ordinary inquiry concerning the clothes which were scattered about the office. Under these circumstances he was not then deprived of his freedom of action in any significant way. The compulsion and danger of intimidation that the *Miranda* rule was designed to eliminate was clearly not present. Accordingly the trial court did not err in admitting the answer of defendant Harvey into evidence.

Harvey next contends that the affiant in the complaint for the search warrant should have been made available to him as his witness at the trial on the merits, as the witness might have been able to exculpate him. He cites *Roviaro* v. *United States,* 353 U.S. 53, 1 L.Ed.2d 639, 77 S.Ct. 623, and a number of other cases to the effect that fundamental fairness demanded the presence of affiant at the trial. But unlike the facts in *Roviaro,* the affiant here merely appeared before the judge who issued the search warrant. He was not present at the time the warrant was served nor at Harvey's arrest. Whether he would have been able to identify Harvey as the individual he described in his complaint would relate only to the question of probable cause for the

issuance of the search warrant and would have had no bearing on guilt or innocence of the crime charged. Under such circumstances we have frequently held that *Roviaro* is not applicable and that it is not error to deny the production of such a witness where his testimony would not be relevant. *People* v. *Mack,* 12 Ill.2d 151; *People* v. *Williams,* 38 Ill.2d 150; *People* v. *Connie,* 34 Ill.2d 353.

Finally, defendant Harvey contends that he was not proved guilty beyond a reasonable doubt and that his sentence was excessive. After a careful review of the evidence, we find it fully sufficient to support the jury's verdict and not, as he contends, so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of guilt warranting our interference on review. (*People* v. *Mack,* 12 Ill.2d 151.) Likewise, we find no abuse of discretion on the part of the trial court in the imposition of sentence. Defendant Harvey was afforded a fair and complete hearing in aggravation and mitigation and his punishment was well within the statutory limits. Under such circumstances the trial court was in a far superior position than we to make a sound determination concerning the punishment to be imposed. *People* v. *Taylor,* 33 Ill.2d 417.

For the reasons stated the judgments of the circuit court of Cook County in each of the cases here reviewed, People v. Stansberry, People v. Hatch, and People v. Harvey, are hereby affirmed.

*Judgments affirmed.*

Mr. JUSTICE SCHAEFER, dissenting:

In my opinion the evidence does not establish the guilt of the defendant, James Harvey, beyond a reasonable doubt.