# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Moore*, 2013 IL App (1st) 110793

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TAMAR MOORE, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-11-0793 |
| Filed | March 22, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions for aggravated unlawful use of a weapon and unlawful use of a weapon by a felon were upheld over his constitutional challenge to the former offense and his contention that the testimony of the arresting officers that they saw defendant drop a firearm and kick it under a bush was unbelievable, since the mere fact that officers are frequently charged with giving false "dropsy" testimony did not establish that the officers here could not be believed. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-09162; the Hon. Sharon M. Sullivan, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Michael J. Pelletier, Alan D. Goldberg, and Sean Collins-Stapleton, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Matthew Connors, and Anne L. Magats, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE REYES delivered the judgment of the court, with opinion.

Presiding Justice Lampkin and Justice Hall concurred in the judgment and opinion.

## OPINION

¶ 1    Following a bench trial, defendant Tamar Moore was convicted of two counts of aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a)(1), (2), (3)(A) (West 2010)) and one count of unlawful use of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2010)). The trial court sentenced defendant to three years and six months of imprisonment. On appeal, defendant contends: (1) the State failed to prove his guilt beyond a reasonable doubt because the officers' testimony was not credible; and (2) his conviction under the AUUW statute violates his second amendment rights of the United States Constitution. We affirm defendant's conviction and sentence, finding: (1) the trier of fact could have reasonably found the arresting officers' testimony credible; and (2) the AUUW statute is constitutional.

¶ 2                              BACKGROUND

¶ 3    The State arrested and charged defendant on May 6, 2010 with two counts of AUUW and one count of unlawful use of a weapon by a felon. The State based the charges on police testimony that defendant, a previously convicted felon, possessed a loaded and concealed handgun while in public.

¶ 4    At trial, the State presented the testimony of Sergeant Michael Saladino and Officer Bjornn Millan of the Chicago police department. Both officers testified that early in the morning on May 6, 2010, they were patrolling the intersection of North Avenue and Mayfield Avenue on the west side of Chicago. The Chicago police department sent Sergeant Saladino, Officer Millan, and Officer Joseph Plovanich to survey the area after receiving numerous complaints about violent activity originating from a social club operating near the intersection. The officers observed the intersection from their respective marked squad cars, which were parked next to each other on North Avenue.

¶ 5    At approximately 4:15 a.m., the officers observed a group of men congregating at the

southeast corner of the intersection. The group then began moving south down Mayfield Avenue. Millan and Plovanich turned left on Mayfield and drove south to investigate. Saladino turned his vehicle around to improve his line of sight, stopping in the intersection and facing south approximately 50 to 75 feet away from the group. Saladino testified that after Millan and Plovanich passed defendant, he observed defendant stop in front of a tall bush, reach into his waistband with his right hand, and pull out a handgun. According to Saladino, defendant dropped the weapon and kicked it under the bush. Millan and Plovanich then stopped and exited their vehicle, approaching the group. Millan testified he observed defendant appear from under the bush to rejoin the rest of the group. While Saladino and Plovanich secured all of the members of the group, Millan searched the bush, where he recovered a loaded semiautomatic pistol.

¶ 6                                                    ANALYSIS
¶ 7                                          I. Reasonable Doubt Claim
¶ 8        On appeal, defendant argues the trial judge could not have found him guilty of the charges beyond a reasonable doubt because the testimony used to convict him was "inherently unbelievable." When a defendant challenges the sufficiency of the evidence, as defendant does here, the reviewing court must decide whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *People v. Evans*, 209 Ill. 2d 194, 209 (2004). This court will not reverse a decision by the trier of fact unless the evidence is so unreasonable, improbable, or unsatisfactory that it raises a reasonable doubt of the defendant's guilt. *Id.*

¶ 9        According to defendant, the idea that he would remove a weapon from his person in the vicinity of the police belies common sense; in other words, no one would ever be so foolish and, therefore, there must be some reasonable doubt as to whether the officers testified truthfully. To the contrary, we find defendant's actions are consistent with the situation he was in–that is, being pursued by law enforcement–and hardly improbable. Indeed, a criminal opting to dispose of contraband after becoming aware of police presence is not only believable, but also common. See, *e.g.*, *California v. Hodari D.*, 499 U.S. 621, 623 (1991) (while being pursued by officers, defendant tossed away a bag of crack cocaine); *United States v. Ryerson*, 545 F.3d 483, 486 (7th Cir. 2008) (incarcerated defendant requested from prison to have his friend dispose of the machine gun hidden in his garage before the police discovered it); *People v. Comage*, 241 Ill. 2d 139, 142 (2011) (after officers arrived in parking lot, defendant ran away and threw drug paraphernalia over a fence); *In re M.F.*, 315 Ill. App. 3d 641, 643-44 (2000) (upon hearing police knock and announce their presence, defendant exited the apartment through a window and began to throw bags of cocaine toward the street).

¶ 10       According to the testimony of Sergeant Saladino and Officer Millan, they observed defendant and his group from their marked squad cars from a short distance away. It is hardly unbelievable that defendant–aware of both nearby law enforcement and of the fact that he was illegally in possession of the weapon–attempted to rid himself of the firearm before the

officers had an opportunity to detain him. Additionally, there is no evidence to suggest defendant realized the police had a direct view of his abandonment of the weapon. Millan and Plovanich had passed defendant on the street and defendant never turned around to see that Saladino had changed his position. Defendant likely assumed he could safely and quickly abandon the weapon at this point without being detected. Moreover, contrary to defendant's assertions, the fact that he used his right hand to accomplish this task, despite being left handed, does not make the officers' account any less credible. Accordingly, we do not find defendant's argument that the officers' testimony is "inherently unbelievable" persuasive.

¶ 11 Defendant further contends police officers frequently fabricate stories (referred to as "dropsy" testimony) of criminal suspects conveniently dropping evidence in plain view of a police officer in order to circumvent the search and seizure restrictions of the fourth amendment. See *People v. Ash*, 346 Ill. App. 3d 809, 816 (2004) ("A 'dropsy case' is one in which a police officer, to avoid the exclusion of evidence on fourth-amendment grounds, falsely testifies that the defendant dropped the [evidence] in plain view ***."). According to defendant, false "dropsy" testimony is commonplace and has become a pervasive problem that threatens the legitimacy of the justice system. Defendant supports this claim with various newspaper and law review articles that either directly or indirectly comment on the phenomenon. It follows, according to defendant, that these reports establish the widespread nature of false "dropsy" testimony, undermining the officers' version of events. In short, because police frequently invent such stories, Saladino and Millan cannot reasonably be believed.

¶ 12 Even assuming, however, that this anecdotal evidence actually establishes a trend or problem, it does little to discredit the officers' testimony in this case. It does not follow that because other police officers have falsified similar testimony in the past that reasonable doubt has been conclusively established here. At best, such evidence suggests one would be wise to consider the frequency of police perjury as a factor when judging credibility. Such evidence does not, however, compel the trier of fact to disbelieve any officer's testimony that describes witnessing a defendant dropping or abandoning contraband.

¶ 13 After considering all of the evidence in this case, the trial judge found the officers to be credible. The trier of fact is the sole judge of credibility at trial and defendant has not established the trial court's determination was so improbable and unreasonable that we must reverse. Viewing the evidence in a light most favorable to the prosecution, the trial judge reasonably could have found the elements of the crime proved beyond a reasonable doubt.

¶ 14                                   II. Second Amendment

¶ 15 In addition, defendant argues his conviction under the AUUW statute violates his right to keep and bear arms under the second amendment of the United States Constitution. Defendant relies on *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. ___, 130 S. Ct. 3020 (2010). In *Heller*, after a lengthy discussion of the history and context surrounding the adoption of the second amendment, the Court found "the inherent right of self-defense has been central to the Second Amendment right."

*Heller*, 554 U.S. at 628. The *Heller* Court then defined the home as the place "where the need for defense of self, family, and property is most acute." *Id.* Accordingly, the Court held that the second amendment right to bear arms necessarily included the right to possess a handgun in the home for self-defense. *Id.* at 628-29 ("Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home the most preferred firearm in the nation to keep and use for protection of one's home and family [citation] would fail constitutional muster." (Internal quotation marks omitted.)). In *McDonald*, the Court further defined self-defense as a basic right "deeply rooted in this Nation's history and tradition." (Internal quotation marks omitted.) *McDonald*, 561 U.S. at ___, 130 S. Ct. at 3036 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)). Thus, the Court incorporated the second amendment right to keep and bear arms against the states. *Id.* at ___, 130 S. Ct. at 3050.

¶ 16    Defendant reads these cases as acknowledging a constitutional right to carry a firearm for self-defense in certain public areas outside of the home. As noted by defendant in his brief, this argument has recently been rejected by this court and is currently under review by the Illinois Supreme Court. See *People v. Aguilar*, 408 Ill. App. 3d 136, 148 (2011), *appeal allowed*, No. 112116 (Ill. May 25, 2011) ("The [United States] Supreme Court's decisions do not define the fundamental right to bear arms to include the activity barred by the AUUW statute."); *People v. Mimes*, 2011 IL App (1st) 082747, ¶ 81 ("We are not persuaded *** that allowing an individual to carry a loaded and immediately accessible firearm in public for the lawful purpose of self-defense is not very different from that same individual's fundamental right to have a loaded and accessible handgun at home for the purpose of self-defense.").

¶ 17    After the filing of this appeal, however, the Seventh Circuit Court of Appeals issued an opinion finding Illinois's AUUW statute unconstitutional. See *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012).[1] Nonetheless, the decision is not binding on Illinois courts. *People v. Stansberry*, 47 Ill. 2d 541, 544-45 (1971). Without a ruling from the United States Supreme Court, a split often exists between the lower federal courts.[2] *Id.* at 545. As the United States Supreme Court has not yet ruled on this question, the Seventh Circuit's decision in *Moore* constitutes at most persuasive authority. *Id.*

¶ 18    Regarding the constitutionality of the AUUW statute, we do not find the Seventh Circuit's reasoning in *Moore* persuasive. We find it important to note again that the Court in "*Heller* and *McDonald* specifically limited its rulings to interpreting the second amendment's protection of the right to possess a handgun in the home for self-defense purposes, not the right to possess handguns outside of the home." *Aguilar*, 408 Ill. App. 3d

---

[1]On December 24, 2012, this court ordered the parties to file supplemental briefing addressing the Seventh Circuit's decision in *Moore v. Madigan*.

[2]In fact, the Tenth Circuit recently concluded "the concealed carrying of firearms falls outside the scope of the Second Amendment's guarantee." *Peterson v. Martinez*, No. 11-1149, 2013 WL 646413, at *11 (10th Cir. Feb. 22, 2012). While this decision does not run entirely contrary to the Seventh Circuit's holding in *Moore*, it does raise some doubt as to the uniformity of the federal circuit courts.

at 148. Accordingly, we do not agree with the Seventh Circuit that the right to self-defense delineated in *Heller* and *McDonald* encompasses a right to carry a loaded, readily accessible firearm in public areas. Given the line of contrary precedent in Illinois courts on this issue, we see no reason to adopt the decision in *Moore*.

¶ 19 Moreover, defendant's constitutional challenge additionally suffers because of his status as a felon.[3] Neither *Heller*, *McDonald*, nor *Moore* has suggested the second amendment right to keep and bear arms guarantees a felon's ability to own and possess a firearm. See *Heller*, 554 U.S. at 626 ("nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons"); *McDonald*, 561 U.S. at ___, 130 S. Ct. at 3047 (repeating *Heller*'s "reassurances" regarding felons); *Moore*, 702 F.3d at 940 (finding bans limited to felons do not fall within second amendment protection). Accordingly, we reject defendant's constitutional claim and affirm his convictions under the AUUW statute.

¶ 20          CONCLUSION

¶ 21 For the aforementioned reasons, we affirm defendant's convictions and sentence under the AUUW and unlawful use of a weapon by a felon statutes.

¶ 22 Affirmed.

---

[3]At trial, the parties stipulated that defendant had a prior felony conviction for possession of a controlled substance.