# Illinois Official Reports

## Appellate Court

---

**People v. Moore, 2014 IL App (1st) 110793-B**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TAMAR MOORE, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-11-0793 |
| Filed<br>Rehearing denied | April 25, 2014<br>May 19, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for the Class 2 offense of aggravated unlawful use of a weapon was upheld, where defendant failed to show that the arresting officers' testimony that they saw defendant hide a firearm under a bush was not credible, and the decision in *Aguilar* finding the Class 4 offense of aggravated unlawful use of a weapon unconstitutional does not apply to the Class 2 offense, so his conviction did not violate the second amendment. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-9162; the Hon. Sharon M. Sullivan, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Sean Collins-Stapleton, all of State Appellate Defender's Office, of Chicago, for appellant. |
| | |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Matthew Connors, and Anne L. Magats, Assistant State's Attorneys, of counsel), for the People. |

| Panel | JUSTICE REYES delivered the judgment of the court, with opinion. Justices Hall and Lampkin concurred in the judgment and opinion. |

## OPINION

¶ 1 Following a bench trial, defendant Tamar Moore (defendant) was found guilty of two counts of aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a)(1), (2), (3)(A), (d) (West 2010)) and one count of unlawful use of a weapon by a felon (720 ILCS 5/24-1.1(a), (e) (West 2010)). After merging the counts into one, the trial court sentenced defendant to three years and six months of imprisonment on the Class 2 form of the AUUW offense (720 ILCS 5/24-1.6(a)(1), (d) (West 2010)). On appeal, defendant contends: (1) the State failed to prove his guilt beyond a reasonable doubt because the officers' testimony was not credible; and (2) his conviction under the AUUW statute violates his second amendment rights of the United States Constitution (U.S. Const., amend. II). This court initially affirmed defendant's conviction, finding: (1) the trier of fact could have reasonably found the arresting officers' testimony credible; and (2) the AUUW statute was constitutional. *People v. Moore*, 2013 IL App (1st) 110793. The Illinois Supreme Court subsequently entered a supervisory order directing us to vacate our judgment and reconsider our opinion in light of *People v. Aguilar*, 2013 IL 112116. *People v. Moore*, No. 115935 (Ill. Jan. 29, 2014). Upon further examination, we reaffirm defendant's conviction.

¶ 2 BACKGROUND

¶ 3 The State charged defendant by information on May 19, 2010 with two counts of the Class 2 form of AUUW and one count of the Class 2 form of unlawful use of a weapon by a felon. The State based the charges on police testimony that defendant, a previously convicted felon, possessed a loaded and concealed handgun while in public.

¶ 4 At a bench trial, the State presented the testimony of Sergeant Michael Saladino and Officer Bjornn Millan of the Chicago police department. Both officers testified that early in the morning on May 6, 2010, they were patrolling the intersection of North Avenue and Mayfield Avenue on the west side of Chicago. The Chicago police department sent Saladino, Millan, and Officer Joseph Plovanich to survey the area after receiving numerous complaints about violent activity originating from a social club operating near the intersection. The officers observed the intersection from their respective marked squad cars, which were parked next to each other on North Avenue.

¶ 5    At approximately 4:15 a.m., the officers observed a group of men congregating at the southeast corner of the intersection. The group then began moving south down Mayfield Avenue. Millan and Plovanich turned left on Mayfield and drove south to investigate. Saladino turned his vehicle around to improve his line of sight, stopping in the intersection and facing south approximately 50 to 75 feet away from the group. Saladino testified that after Millan and Plovanich passed defendant, he observed defendant stop in front of a tall bush, reach into his waistband with his right hand, and pull out a handgun. According to Saladino, defendant dropped the weapon and kicked it under the bush. Millan and Plovanich then stopped and exited their vehicle, approaching the group. Millan testified he observed defendant appear from under the bush to rejoin the rest of the group. While Saladino and Plovanich secured all of the members of the group, Millan searched the bush, where he recovered a loaded semiautomatic pistol.

¶ 6    Based on the testimony establishing the foregoing facts, the trial court found defendant guilty on all counts. At a subsequent hearing, the trial court merged counts II and III into count I, sentencing defendant on the Class 2 form of the AUUW offense (720 ILCS 5/24-1.6(a)(1), (d) (West 2010)).

¶ 7                                      ANALYSIS
¶ 8                              I. Reasonable Doubt Claim
¶ 9    Defendant argues the trial judge could not have found him guilty of the charges beyond a reasonable doubt because the testimony used to convict him was "inherently unbelievable." When a defendant challenges the sufficiency of the evidence, as defendant does here, the reviewing court must decide whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *People v. Evans*, 209 Ill. 2d 194, 209 (2004). This court will not reverse a decision by the trier of fact unless the evidence is so unreasonable, improbable, or unsatisfactory that it raises a reasonable doubt of the defendant's guilt. *Id.*

¶ 10    According to defendant, the idea that he would remove a weapon from his person in the vicinity of the police belies common sense; in other words, no one would ever be so foolish and, therefore, there must be some reasonable doubt as to whether the officers testified truthfully. To the contrary, we find defendant's actions are consistent with the situation that he found himself in–that is, being pursued by law enforcement–and hardly improbable. Indeed, a criminal opting to dispose of contraband after becoming aware of a police presence is not only believable, but also common. See, *e.g.*, *California v. Hodari D.*, 499 U.S. 621, 623 (1991) (while being pursued by officers, defendant tossed away a bag of crack cocaine); *United States v. Ryerson*, 545 F.3d 483, 486 (7th Cir. 2008) (incarcerated defendant requested from prison to have his friend dispose of the machine gun hidden in his garage before the police discovered it); *People v. Comage*, 241 Ill. 2d 139, 142 (2011) (after officers arrived in parking lot, defendant ran away and threw drug paraphernalia over a fence); *In re M.F.*, 315 Ill. App. 3d 641, 643-44 (2000) (upon hearing police knock and announce their presence, defendant exited the apartment through a window and began to throw bags of cocaine toward the street).

¶ 11    According to the testimony of Saladino and Millan, they observed defendant and his group from their marked squad cars from a short distance away. It is certainly believable that defendant–aware of both nearby law enforcement and of the fact that he was illegally in possession of the weapon–attempted to rid himself of the firearm before the officers had an

opportunity to detain him. Millan and Plovanich had passed defendant on the street and defendant never turned around to see that Saladino had changed his position. With no evidence to suggest defendant realized Saladino had a direct view of his abandonment of the weapon, a rational trier of fact could conclude defendant decided he could safely and quickly abandon the weapon at this point without being detected. Moreover, contrary to defendant's assertions, the fact that he used his right hand to accomplish this task, despite being left handed, does not make the officers' account any less credible. Accordingly, we do not find defendant's argument that the officers' testimony is "inherently unbelievable" persuasive.

¶ 12    Defendant further contends police officers frequently fabricate stories (referred to as "dropsy" testimony) of criminal suspects conveniently dropping evidence in plain view of a police officer in order to circumvent the search and seizure restrictions of the fourth amendment. See *People v. Ash*, 346 Ill. App. 3d 809, 816 (2004) ("A 'dropsy case' is one in which a police officer, to avoid the exclusion of evidence on fourth-amendment grounds, falsely testifies that the defendant dropped the [evidence] in plain view ***."). According to defendant, false "dropsy" testimony is commonplace and has become a pervasive problem that threatens the legitimacy of the justice system. Defendant supports this claim with various newspaper and law review articles that either directly or indirectly comment on the phenomenon. These reports allegedly establish the widespread nature of false "dropsy" testimony, thereby undermining the officers' version of events. In short, defendant argues because police frequently invent such stories, Saladino and Millan cannot reasonably be believed.

¶ 13    Even assuming, however, that this anecdotal evidence actually establishes a trend or problem, it does little to discredit the officers' testimony in this case. It does not follow that because other police officers have falsified similar testimony in the past that reasonable doubt has been conclusively established here. At best, such evidence suggests one would be wise to consider the frequency of police perjury as a factor when judging credibility. Such evidence does not, however, compel the trier of fact to disbelieve any officer's testimony that describes witnessing a defendant dropping or abandoning contraband. See, *e.g., People v. Gustowski*, 102 Ill. App. 3d 750, 753-54 (1981) (discrepancies in the officers' testimony pertaining to the defendant's dropping of contraband were insufficient to render the trier of fact's credibility determination unreasonable).

¶ 14    After considering all of the evidence in this case, the trial judge found the officers to be credible. The trier of fact is the sole judge of credibility at trial and defendant has not established the trial court's determination was so improbable and unreasonable that we must reverse. *People v. Hernandez*, 278 Ill. App. 3d 545, 552 (1996). Viewing the evidence in a light most favorable to the prosecution, the trial judge reasonably could have found the elements of the crime proved beyond a reasonable doubt. *Evans*, 209 Ill. 2d at 209.

¶ 15                              II. Second Amendment

¶ 16    In his initial brief, defendant argued his conviction under the AUUW statute violated his right to keep and bear arms under the second amendment of the United States Constitution, relying on *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010). Section 24-1.6 of the AUUW statute provides in relevant part:

>    "(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:

- 4 -

(1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode, legal dwelling, or fixed place of business *** any pistol, revolver, stun gun or taser or other firearm; or

(2) Carries or possesses on or about his or her person, upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town, except when an invitee thereon or therein, for the purpose of the display of such weapon or the lawful commerce in weapons, or except when on his or her own land or in his or her own abode *** or fixed place of business, any pistol, revolver, stun gun or taser or other firearm; and

(3) One of the following factors is present:

(A) the firearm possessed was uncased, loaded and immediately accessible at the time of the offense[.]

* * *

(d) Sentence.

(1) Aggravated unlawful use of a weapon is a Class 4 felony; a second or subsequent offense is a Class 2 felony for which the person shall be sentenced to a term of imprisonment of not less than 3 years and not more than 7 years.

***

(3) Aggravated unlawful use of a weapon by a person who has been previously convicted of a felony in this State or another jurisdiction is a Class 2 felony for which the person shall be sentenced to a term of imprisonment of not less than 3 years and not more than 7 years." 720 ILCS 5/24-1.6 (West 2010).

After the initial disposition of this appeal, our supreme court decided *Aguilar*, which found the Class 4 form of the AUUW offense to be unconstitutional. *Aguilar*, 2013 IL 112116, ¶ 22. The record in this case reveals the trial court convicted and sentenced defendant under the Class 2 form of the offense. While *Aguilar* did not directly address whether the Class 2 form of AUUW was similarly invalid, this court has since visited the issue and determined the Class 2 form of AUUW remains constitutional. See *People v. Burns*, 2013 IL App (1st) 120929, ¶ 27 ("[T]he Class 2 form of AUUW *** merely regulates the possession of a firearm by a person who has been previously convicted of a felony" and, therefore, "defendant's constitutional challenge to the Class 2 form of the offense in the AUUW statute fails."); see also *People v. Soto*, 2014 IL App (1st) 121937, ¶ 14 ("[W]e agree that the Class 2 form of AUUW under section 24-1.6(a)(1), (a)(3)(A) is a reasonable regulation of the second amendment right to bear arms."). Accordingly, *Aguilar* does not affect defendant's conviction for AUUW and we reaffirm the judgment of the circuit court of Cook County.

¶ 17                                              CONCLUSION

¶ 18        For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 19        Affirmed.