# Illinois Official Reports

## Appellate Court

---

### *People v. Fort*, 2014 IL App (1st) 120037

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TASHAWNDA FORT, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-12-0037 |
| Filed<br>Rehearing denied | April 30, 2014<br>May 21, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for possession of cocaine was reversed and the cause was remanded for further proceedings, where the trial court erred in refusing to suppress defendant's response to an officer's question in the course of the execution of a search warrant as to whether she had anything in her bedroom the police should know about, since defendant was in custody at the time, the officer did not advise her of her *Miranda* rights before asking the question, and the prosecution failed to present evidence beyond a reasonable doubt that the error had no prejudicial effect. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-243; the Hon. John T. Doody, Jr., Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on Appeal      Michael J. Pelletier, Alan D. Goldberg, and Brian E. Koch, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary P. Needham, and Marci Jacobs, Assistant State's Attorneys, of counsel), for the People.

Panel      JUSTICE NEVILLE delivered the judgment of the court, with opinion.
Presiding Justice Hyman concurred in the judgment and opinion.
Justice Mason dissented, with opinion.

**OPINION**

¶ 1      After a bench trial, the trial court found Tashawnda Fort guilty of possessing cocaine. On appeal, Fort contends that the trial court should have granted her motion to suppress evidence of statements she made to police before police reminded her of her right not to answer questions. We find that police obtained the evidence by means of a custodial interrogation conducted without *Miranda* warnings, and therefore, the trial court should have granted the motion to suppress. Because we find the error prejudicial, we reverse and remand for further proceedings in accord with this opinion.

¶ 2      BACKGROUND

¶ 3      On November 17, 2009, police obtained a warrant to search a home on the west side of Chicago and Samuel Kirk, who police expected to find in the home, for cocaine and paraphernalia related to cocaine trafficking. Two days later, around 10:30 a.m., Chicago police officer Roberto Delcid and other officers, with guns drawn, forcibly entered the home listed on the search warrant. Inside they found Kirk and several other persons, including Fort. At some point, Delcid escorted Fort upstairs and asked her a question without first telling her about her *Miranda* rights. Delcid found 47 packets of cocaine in a pillowcase in a room upstairs. Police took Fort into custody and charged her with possession of cocaine with intent to distribute.

¶ 4      Fort moved to suppress evidence of any statements she made in response to the questions Delcid asked when he escorted her upstairs. At the hearing on the motion, Delcid testified that after police gathered most persons in the residence into the living room, under police guard, Fort asked Delcid if he would permit her to get her baby from her bedroom, rather than leaving the baby unattended while the officers executed the search warrant. Delcid testified that he asked his supervisor whether "it was okay to go up there and retrieve the baby." When he escorted Fort to the bedroom door and saw the baby in the room, he asked Fort "if there [was]

- 2 -

anything in the room [police] should know about because the room eventually is going to get searched anyway." She told him she had some cocaine inside the pillowcase on her bed.

¶ 5 Fort's account of the encounter disagreed with Delcid's in many respects. The trial court found Delcid more credible and held that Delcid did not subject Fort to custodial interrogation. The court permitted Delcid to testify at the trial that Fort told him about the narcotics in the pillowcase on her bed.

¶ 6 At the bench trial, Delcid testified that in the bedroom where he found the cocaine in the pillowcase, he also found Fort's state identification card, a pharmacy receipt for Fort, and a letter addressed to Fort. Police systematically searched the entire residence.

¶ 7 The trial court held that the prosecution had not proven an intent to distribute the cocaine, so the court found Fort guilty of only possession. The court sentenced Fort to 24 months' probation and the payment of $1,170 in fees and fines. Fort now appeals.

¶ 8                                                    ANALYSIS

¶ 9 Fort raises only one issue on appeal. She contends that the trial court should have granted her motion to suppress testimony about her response to Delcid's question, which he asked without giving any *Miranda* warnings.

¶ 10 The parties agree on the applicable standards. We defer to the trial court's findings of fact. *People v. Slater*, 228 Ill. 2d 137, 149 (2008). Fort does not contest those findings. We review *de novo* the ruling permitting the State to introduce into evidence testimony about Fort's statements, taking as true the testimony the trial court found credible. *Slater*, 228 Ill. 2d at 149. The dissent accuses us of sidestepping a credibility issue. But on this appeal, Fort accepts the facts on which the trial court relied when it denied her motion to suppress statements. The dissent seeks to use the trial court's credibility determination to distract from the legal issue the appeal presents and to besmirch Fort as someone the trial court found not credible.

¶ 11 "The prosecution may not use statements of the defendant stemming from custodial interrogation unless *Miranda* warnings have been given." *People v. Maiden*, 210 Ill. App. 3d 390, 394 (1991). "[A] person being questioned by law enforcement officers must first 'be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed,' as long as that person has been 'taken into custody or otherwise deprived of his freedom of action in any significant way.' " *Slater*, 228 Ill. 2d at 149 (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)).

¶ 12 The State claims that Delcid did not engage in custodial interrogation of Fort, in that police did not have Fort in custody at the time of the question, and the question qualifies as a preliminary question at the scene, and not as interrogation.

¶ 13 To determine whether police have taken a defendant into custody, the trial court must decide whether a reasonable person in the defendant's circumstances "would have felt he or she was not at liberty to terminate the interrogation and leave." *People v. Braggs*, 209 Ill. 2d 492, 506 (2003). The court should consider "(1) the location, time, length, mood, and mode of the questioning; (2) the number of police officers present during the interrogation; (3) the presence or absence of family and friends of the individual; (4) any indicia of a formal arrest procedure, such as the show of weapons or force, physical restraint, booking or fingerprinting;

(5) the manner by which the individual arrived at the place of questioning; and (6) the age, intelligence, and mental makeup of the accused." *Slater*, 228 Ill. 2d at 150.

¶ 14 The questioning here took place in Fort's home, at her bedroom door, and it took very little time. Only Officer Delcid heard Fort's answer, but other officers filled the house. Fort's family and friends were nearby, but not with Fort at the time of questioning. Police made a considerable show of force as several officers forcibly entered the home with guns drawn and rounded up most of the home's inhabitants into the living room. Fort asked permission to retrieve her baby, and Delcid asked his supervisor before permitting Fort to go to her bedroom with a police officer closely watching her. No evidence indicates any intellectual deficiencies made Fort, an adult, especially vulnerable.

¶ 15 In view of the sequestering of Fort in the living room under armed police guard, Fort's need to request permission to attend to her baby, Delcid's need for a supervisor's approval of the request, and Fort's retrieval of her baby under police supervision, we find that a reasonable person in Fort's position, innocent of any crime, would not believe she could simply refuse to answer the question and leave the encounter to retrieve her baby. Police had deprived Fort of freedom of action in a very significant way, by restricting her ability to attend to her baby. Accordingly, under the standards enunciated in *Slater*, we find that police had Fort in custody when Delcid asked her whether there was anything in her room police should know about.

¶ 16 The dissent disagrees, and finds that Fort was "clearly not 'in custody,' " without applying the standards set out in *Slater*, *Braggs*, and *Miranda* for determining whether police have taken custody of a person. The dissent does not dispute our conclusion that a reasonable innocent person in Fort's situation would not believe she could refuse to answer the officer's question and leave the encounter to retrieve her baby. Neither does the dissent offer any authority that would permit this court to ignore the test set out in *Slater*, *Braggs*, and *Miranda*. Under the *Slater*, *Braggs*, and *Miranda* test, police had custody of Fort when Delcid questioned her.

¶ 17 The State argues that the question does not amount to interrogation. Police do not violate constitutional rights when they ask normal, ordinary questions at the scene of an encounter with civilians. *People v. Stansberry*, 47 Ill. 2d 541, 548 (1971). But a question at the scene counts as impermissible interrogation if it is reasonably likely to elicit an incriminating response. *People v. Olivera*, 164 Ill. 2d 382, 391-92 (1995).

¶ 18 Delcid testified that he asked Fort whether police should know about anything in the room only for security purposes, because he feared that Fort might have guns in the room. But instead of asking about weapons, he asked a question which applied to any contraband police might find. The dissent ignores Delcid's testimony that he asked Fort "if there [was] anything in the room [police] should know about because the room eventually is going to get searched anyway." The question asks for anything in Fort's room that might interest police, when police were executing a warrant to search for narcotics. Delcid candidly admitted that he did not limit the scope of his question to weapons. A question as to whether a defendant has contraband qualifies as interrogation, likely to elicit an incriminating response. See *People v. Elliot*, 314 Ill. App. 3d 187, 190 (2000). We hold that the facts found by the trial court show that Delcid engaged in an impermissible custodial interrogation of Fort when, after police forcibly entered her home with guns drawn and gathered most of the persons there into one room, and allowed Fort to attend to her baby only with a police supervisor's permission and with a police escort, Delcid asked Fort if police should know about anything she had in her bedroom, because

police would find it eventually in the search. Accordingly, the trial court erred when it denied Fort's motion to suppress evidence of statements she made in response to the question.

¶ 19 The State also argues that we should affirm the conviction despite the error, because the evidence apart from the statement overwhelmingly proved Fort guilty. "Because constitutional rights as enunciated in *Miranda* are in issue, for this error to be harmless, it would have to be harmless beyond a reasonable doubt." *People v. Szerletich*, 86 Ill. App. 3d 1121, 1129 (1980). Our supreme court has held that the erroneous admission of a confession into evidence is rarely harmless error, because confessions have such strong persuasive force. *People v. St. Pierre*, 122 Ill. 2d 95, 114 (1988).

¶ 20 Fort does not contest the State's contention that even without the confession, police would have found the cocaine in the bedroom with Fort's state identification card, a prescription in her name, a letter addressed to her, and her baby. However, the evidence shows that others had access to Fort's room, and some adults were upstairs near Fort's bedroom when police forcibly entered. Without the confession, Fort's attorney might have persuasively argued that other persons in the home involved with narcotics may have tried to hide some cocaine in Fort's room when they heard police entering.

¶ 21 In assessing whether we can consider the trial court's error harmless beyond a reasonable doubt, the dissent shifts the burden to Fort. The dissent finds "no evidence that Fort shared her bedroom with anyone but her baby," when the record also has no evidence that Fort had exclusive use of the bedroom or the bed. *Infra* ¶ 39. The State introduced no medical evidence to show that the adult left upstairs during the search was either ill or bedridden. Neither party presented evidence of where in the home all the adults were when police knocked and announced their office.

¶ 22 The dissent points to the evidence the State introduced in an effort to show that Fort intended to distribute the cocaine. Fort had the nickname "Lips," and the State presented evidence that some baggies discovered in the search bore a lips logo. The trial court expressly did not believe that police found the lips logo on the narcotics found in the pillowcase. Delcid also testified that he found $1,500 in cash in a purse Fort claimed as her own. The trial court found that evidence insufficient to convict Fort on the charge of intent to distribute. The evidence has little bearing on the possession charge. We find that the State has not shown beyond a reasonable doubt that the erroneous admission of Fort's confession into evidence did not affect the outcome of the trial.

¶ 23                                   CONCLUSION

¶ 24 Officer Delcid custodially interrogated Fort when he asked her, outside her bedroom, whether she had anything in her room police needed to know about. Because he did not advise her of her *Miranda* rights before asking that question, the trial court should have suppressed evidence of Fort's response. The State failed to show beyond a reasonable doubt that the error had no prejudicial effect. Accordingly, we reverse the conviction and remand for further proceedings in accord with this opinion.

¶ 25         Reversed and remanded.

¶ 26    JUSTICE MASON, dissenting.

¶ 27    I cannot reconcile the majority's decision with the well-settled standards applicable to credibility determinations and factual findings made by trial courts and, for that reason, I dissent.

¶ 28    When we review a trial court's ruling on a motion to suppress, we accord "great deference" to the trial court's factual findings and will reverse them only if they are contrary to the manifest weight of the evidence. *People v. Murdock*, 2012 IL 112362, ¶ 29. "This deferential standard is grounded in the reality that the circuit court is in a superior position to determine and weigh the credibility of the witnesses, observe the witnesses' demeanor, and resolve conflicts in their testimony." *People v. McDonough*, 239 Ill. 2d 260, 266 (2010). This court may not substitute its judgment for that of the trier of fact as to the credibility of witnesses and will not set aside a criminal conviction unless the evidence is so improbable or unsatisfactory as to create a reasonable doubt regarding defendant's guilt. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224-25 (2009).

¶ 29    Fort's motion to suppress presented the trial court with a classic credibility determination. Officer Delcid testified that after police entered the premises in the course of executing a search warrant, Fort requested to go upstairs and retrieve her baby, who was sleeping on the bed in her room. Prior to entering the room, which had not yet been searched or cleared of any weapons, Delcid asked Fort if there was anything in the room he should know about, at which point Fort told him there was some "work" in a pillowcase on the bed. At the suppression hearing however, Fort testified that (1) she and her baby were downstairs when the police arrived, (2) she never requested to go upstairs, (3) Delcid singled her out and made her come upstairs with him, (4) there were no drugs in her bedroom and (5) she never admitted to Delcid that there were drugs in her bedroom. In other words, Fort's contention was that Delcid's story was entirely fabricated. After hearing the evidence and observing the two witnesses who testified, the trial judge believed Delcid and disbelieved Fort.

¶ 30    Sidestepping this credibility determination, the majority instead concludes that even crediting Delcid's version of events, his single question of Fort prior to entering the bedroom amounted to a custodial interrogation and that because Fort was not given *Miranda* warnings, her statement to Delcid must be suppressed. The majority cites no authority that compels this conclusion as a matter of law.

¶ 31    The officers in this case were executing a valid search warrant supported by probable cause and after making on-the-scene observations of drug transactions taking place outside the premises that morning. The target of the warrant was Samuel Kirk, who was present in the residence and who was handcuffed after the officers entered. In contrast, neither Fort nor anyone else present that morning was suspected of any criminal activity. Although they were gathered in the living room for their own and the officers' safety after the warrant was executed and while the search of the premises was completed, they were clearly not "in custody" since they were not suspected of or charged with any wrongdoing.

¶ 32    Custody is what triggers the applicability of *Miranda* pre-interrogation admonishments. See *People v. Slater*, 228 Ill. 2d 137, 149-50 (2008) (recognizing that *Miranda* warnings were designed to ensure that any inculpatory statement made by a defendant is not due to " ' "compulsion inherent in custodial surroundings" ' " (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 661 (2004), quoting *Miranda*, 384 U.S. at 458)). Accordingly, it is well recognized that *Miranda* is not triggered, and admonishments are not required, when police conduct

- 6 -

general investigatory on-the-scene questioning. *People v. Parks*, 48 Ill. 2d 232, 237 (1971). That is because "[i]n such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." *Miranda v. United States*, 384 U.S. 436, 478 (1966). *Miranda* warnings are required in the context of individuals in police custody who are suspected or accused of crimes. Here, according to the undisputed evidence, Fort was neither suspected nor accused of anything.

¶ 33    The majority emphasizes that officers entered the premises with "guns drawn." This, standing alone, is an insufficient basis upon which to predicate a finding that everyone present in the premises was in custody and that every question asked of any of the occupants amounted to a custodial interrogation. The evidence showed that when officers knocked on the door and announced their office, there was no response. At that point, forced entry was justified. Given the probable cause to believe that a suspected drug dealer and drug paraphernalia would be found in the residence, officers were likewise justified in displaying weapons upon entry. But there is no evidence that once Kirk was handcuffed and the remaining occupants were gathered in the living room, officers continued to display weapons.

¶ 34    The majority also emphasizes that Fort was only permitted to go upstairs after Delcid requested permission from his sergeant to accompany her and then only in Delcid's presence. Again, the fact that officers took reasonable precautions before allowing an occupant of the premises to go into a room that had not been searched or cleared of weapons does not translate into a finding that Fort was in custody.

¶ 35    There is likewise no basis in the record to conclude that Delcid's single question was designed to elicit incriminating evidence from Fort. See *Missouri v. Seibert*, 542 U.S. 600, 615-16 (2004) (arresting officer admitted that he deliberately withheld *Miranda* warnings and employed a question-first, admonish-later interrogation technique). In fact, Delcid's testimony that the question he asked of Fort was designed to insure his own safety and the safety of others is uncontradicted. Delcid consistently and repeatedly testified that his question to Fort was motivated by his concern for his own safety and that of other officers. ("She [Fort] is not going to go into a room that hasn't been cleared of any weapons or type of instruments that could harm police officers"; "I asked her if there was anything in the room for my safety and the safety of other officers.") Fort's testimony at the suppression hearing was that the encounter with Delcid never took place and that she never made a statement incriminating herself. While the trial court was not obligated to accept Delcid's testimony regarding his motivation for asking Fort if there was anything he should know about prior to entering her bedroom, the trial judge was certainly in the best position to determine whether Delcid was telling the truth. There is no basis in the record to second-guess this assessment.

¶ 36    The majority simply overlooks the trial court's credibility determination on this issue. Focusing on the fact that Fort was not free to leave or able to avoid answering Delcid's question, the majority concludes, analyzing the relevant factors under *Slater* and *Braggs*, that she was "in custody." But even assuming that to be the case, Fort was not subject to "interrogation" by Delcid. His single question–interpreted by the trial court to be directed to officer safety–was not designed to elicit an incriminating statement. If an incriminating statement is not made during the course of police "interrogation," the analysis under *Slater* and *Braggs* is irrelevant.

¶ 37    In fact, Delcid had no motive to attempt to get Fort to incriminate herself. The subject of the warrant was in custody. The officers were authorized to and did search the entire premises,

including Fort's bedroom. They did not need any of the occupants to tell them where drugs were located. And if they were inclined to take shortcuts, it would stand to reason that they would have asked all of the occupants to tell them where the drugs were (including Fort's sister and codefendant, Jimece, in whose bedroom drugs were also found), but no such evidence was presented. At bottom, the majority concludes that Delcid, asked by Fort to allow her to go upstairs to get her baby, decided to use the opportunity to interrogate her. I cannot agree with this gloss on the evidence.

¶ 38 I also cannot agree with the majority's harmless error analysis. *People v. Wrice*, 2012 IL 111860, ¶ 71 (recognizing that under *Arizona v. Fulminante*, 499 U.S. 279 (1991), confessions, other than those obtained by physical coercion, are subject to harmless error analysis). Although the majority acknowledges that even without Fort's confession, police would have found the drugs, Fort's identification card, other documents with her name on them and her baby in the bedroom, my colleagues conclude that such evidence was offset by the fact that others had access to Fort's room and "some adults were upstairs near Fort's bedroom when police forcibly entered." *Supra* ¶ 29. I have searched the record and cannot find any support for the latter statement. In fact, at Fort's trial, her sister, Jimece, testified that from the time she entered the residence with police no one other than police officers went upstairs. The only person who was upstairs during the search was the sisters' elderly grandfather, who was permitted to remain upstairs either because he was ill or was bedridden.

¶ 39 Moreover, "[c]onstructive possession of narcotics exists without actual physical dominion over the narcotics but where there is an intent and a capacity to exercise control and dominion over them. [Citation.] Habitation in or rental of the premises where narcotics are discovered is sufficient evidence of control to constitute constructive possession." *People v. Cunningham*, 309 Ill. App. 3d 824, 828 (1999). The State need not prove that defendant had exclusive dominion and control over the room where the drugs are found. *People v. Givens*, 237 Ill. 2d 311, 335 (2010) ("The rule that possession must be exclusive does not mean, however, that the possession may not be joint."); see also *People v. Schmalz*, 194 Ill. 2d 75, 82 (2000) ("[I]f two or more persons share immediate and exclusive control or share the intention and power to exercise control, then each has possession [citation]."). Here the narcotics were found in a pillowcase, on a bed in the bedroom occupied by Fort. There is no evidence that Fort shared her bedroom with anyone but her baby and, therefore, the fact that other adults resided in the premises would not be enough to call into question a conviction for possession of a controlled substance found in Fort's bedroom.

¶ 40 Finally, the majority does not mention other evidence in the record that provides strong support for upholding Fort's conviction, even if her incriminating statement is not considered. At the suppression hearing, Fort claimed Delcid called her by her nickname, "Lips." "Lips" is listed as Fort's nickname on her arrest report. The drugs found in the pillowcase on Fort's bed were packaged in individual baggies embossed with a lips logo. Further, after the drugs were found and Fort was arrested, she asked Delcid if she could give her purse, sitting on the living room floor, to her father. Before giving the purse to Fort's father, Delcid looked inside and found $1,500 in cash in loose bills rubber-banded together. While the trial court declined to convict Fort of possession of a controlled substance with intent to deliver, this additional evidence provides further support to affirm her conviction for possession of the drugs found in her bedroom.

¶ 41         In light of the foregoing overwhelming evidence, just as Delcid did not need Fort to incriminate herself, Fort's incriminating statement is not necessary to sustain her conviction. I would affirm.