(No. 49001.—

THE CITY OF CHICAGO, Appellee, v. CYNDY K. GROFFMAN, Appellant.—THE CITY OF CHICAGO, Appellee, v. CLAUDE JONES, JR., Appellant.

*Opinion filed October 5, 1977.*

Patrick A. Tuite, of Chicago, for appellants.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Robert L. Thompson, Assistant Corporation Counsel, of counsel), for appellee.

MR. JUSTICE DOOLEY delivered the opinion of the court:

The city of Chicago prohibits the operation of public places of amusement, including motion picture theatres, without a license from the city. Municipal Code of Chicago, secs. 104—1, 104.1—2 (1975).

Section 101—5 of the Municipal Code of Chicago reads thus:

"Upon receiving satisfactory proof from the Director of Revenue that the applicant or each of the principal officers, if the applicant is a corporation, is a fit and proper person to be granted such license, and that all laws and provisions of this Code regulating the business or occupation for which such license is applied for, have

> been complied with, the Mayor may authorize the issuance of the said license by the City Clerk."

The same section 101—5 requires:

> "If the mayor disapproves the license application the unsuccessful applicant shall be notified in writing, of the reasons for the disapproval. The license applicant may within 10 days after receiving notice of the disapproval make a request, in writing, to the mayor for a hearing on the disapproved application. Within 10 days after a request for a hearing is made, a public hearing shall be authorized before a hearing examiner appointed by the mayor who shall report his findings to the mayor. The public hearing shall be commenced within 10 days after it is. authorized.
>
> The Mayor shall within 15 days after such hearing has been concluded, if he determines after such hearing that the license application be disapproved, state the reason for such determination in a written finding and shall serve a copy of such finding upon the license applicant."

Defendants, Cyndy Groffman and Claude Jones, Jr., are motion picture theatre operators. They were charged in separate complaints in the circuit court of Cook County with violations of the provisions of the Municipal Code of the city of Chicago making it unlawful to operate an unlicensed motion picture theatre (sec. 104.1—2). Groffman was found guilty of two separate violations. Jones was found guilty of violating this ordinance 51 times. Fines and costs were imposed against each defendant as to each charge. The defendants' appeals were consolidated by the appellate court, which affirmed the convictions. 42 Ill. App. 3d 139.

The only issue is the constitutionality of this ordinance setting forth the procedure to obtain a license of the type in question. This law has had a checkered judicial career. Three judges of the Seventh Circuit Court of Appeals, as well as a judge of the United States District Court, have held it unconstitutional as violative of the first

amendment. In *Grandco Corp. v. Rochford* (7th Cir. 1976), 536 F.2d 197, decided prior to the appellate court opinions, that court held that the doctrine of Federal restraint did not prohibit intervention by the Federal courts in an action by three plaintiff corporations operating motion picture theatres in Chicago to declare this ordinance unconstitutional on its face and to enjoin its enforcement. There it was said:

"It is also clear that Section 101—5 of the Municipal Code is unconstitutional on its face when applied to the licensing of motion picture theaters. Expression through motion pictures is a form of activity protected by the First Amendment. *Joseph Burstyn, Inc. v. Wilson,* 343 U.S. 495, 502, 72 S. Ct. 777, 96 L. Ed. 1098 (1952). The state may subject the exercise of First Amendment freedoms to the prior restraint of a license requirement, but only where it provides 'narrow, objective, and definite standards to guide the licensing authority.' *Shuttlesworth v. Birmingham,* 394 U.S. 147, 151, 89 S. Ct. 935, 938, 22 L. Ed. 2d 162 (1969). Section 101—5, in providing that the mayor *may* issue a license upon a *satisfactory* showing that the applicant is a *fit and proper* person, fails to provide the required standards. We agree with the district court's conclusion that 'as written with regard to movie theatres, this section of the ordinance gives the mayor such broad discretion to deny a license application that it acts as an unconstitutional prior restraint upon the enjoyment and exercise of First Amendment freedoms.' Memorandum of Decision, April 11, 1974 (Unreported). The district court further found, and we agree, that the state appellate court's decision in *City of Chicago v. Town Underground Theatre, Inc.,* 9 Ill. App.

3d 930, 293 N.E.2d 367 (1973), failed to provide a limiting construction with standards to govern the exercise of the mayor's discretion, which might have rendered the ordinance constitutionally acceptable." *Grandco Corp. v. Rochford* (7th Cir. 1976), 536 F.2d 197, 207-08.

The appellate court in this case, after quoting this opinion, stated:

"We will approach this problem with due consideration of the principle that decisions of Federal courts, except of course the United States Supreme Court, are not binding upon the courts of Illinois. (*People v. West* (1971), 3 Ill. App. 3d 106, 116, 278 N.E.2d 233, citing *People v. Stansberry* (1971), 47 Ill. 2d 541, 544, 268 N.E.2d 431, *cert. denied,* 404 U.S. 873, 30 L. Ed. 2d 116, 92 S. Ct. 121; *United States ex rel. Lawrence v. Woods* (7th Cir. 1970), 432 F.2d 1072, *cert. denied,* 402 U.S. 983, 29 L. Ed. 2d 148, 91 S. Ct. 1658.) With all due deference to the United States Court of Appeals and to its decision, we are constrained to act within this principle and to state our own ideas and reach our own independent result." *City of Chicago v. Groffman* (1976), 42 Ill. App. 3d 139, 145.

The general rule is that decisions of United States district and circuit courts are not binding upon Illinois courts. (*People ex rel. Illinois Federation of Teachers v. Lindberg* (1975), 60 Ill. 2d 266, 277; *People v. Stansberry* (1971), 47 Ill. 2d 541, 544.) Apart from the fact that a first amendment right is at issue, it ill behooves the administration of justice in Illinois to have a United States district court, as well as the Court of Appeals for the Seventh Circuit, holding an ordinance unconstitutional while a State appellate court in a divided opinion takes a contrary view.

Nonetheless, we shall consider the issue independent of the decisions of the Federal courts. In substance, the ordinance provides the procedure to obtain a license. Upon receipt of "satisfactory proof" that the applicant is a "fit and proper person," the mayor may authorize the issuance of the license by the city clerk.

The first amendment of the Constitution of the United States provides: "Congress shall make no law *** abridging the freedom of speech, or of the press; ***." The fourteenth amendment provides: "*** nor shall any State deprive any person of life, liberty, or property, without due process of law; ***." Freedom of speech and of the press are guaranteed by the first amendment against abridgement by the United States. The fourteenth amendment protects these rights from invasion by State action. *Lovell v. City of Griffin* (1938), 303 U.S. 444, 450, 82 L. Ed. 949, 953, 58 S. Ct. 666, 668.

It is now well established that motion pictures come within the scope of protection of the free speech and press guarantees of the first and fourteenth amendments. Motion pictures are a vehicle for communication of ideas. *Joseph Burstyn, Inc. v. Wilson* (1952), 343 U.S. 495, 501, 96 L. Ed. 1098, 1105, 72 S. Ct. 777, 780; *American Civil Liberties Union v. City of Chicago* (1954), 3 Ill. 2d 334, 349.

This does not mean, however, that one undertaking to exhibit motion pictures is without restraints in the operation of his business. (*Young v. American Mini Theatres, Inc.* (1976), 427 U.S. 50, 62, 49 L. Ed. 2d 310, 321, 96 S. Ct. 2440, 2448; *Interstate Circuit, Inc. v. City of Dallas* (1968), 390 U.S. 676, 684, 20 L. Ed. 2d 225, 232, 88 S. Ct. 1298, 1303; *Joseph Burstyn, Inc. v. Wilson* (1952), 343 U.S. 495, 502, 96 L. Ed. 1098, 1106, 72 S. Ct. 777, 781.) A city may impose reasonable regulations upon those engaged in this undertaking, and may exact license fees for regulation and revenue under its police

powers. *City of Metropolis v. Gibbons* (1929), 334 Ill. 431; *Kirtley v. State* (1949), 227 Ind. 175, 84 N.E.2d 712; *Central States Theater Corp. v. Sar* (1954), 245 Iowa 1254, 66 N.W.2d 450.

Courts have been warned that wherever there is possible legislative abridgement of constitutional rights to be "astute to examine the effect of the challenged legislation." (*Schneider v. State* (1939), 308 U.S. 147, 161, 84 L. Ed. 155, 165, 60 S. Ct. 146, 151.) In considering this ordinance we must remember that the vital question is the protection of first amendment guarantees. Laws affecting such constitutional rights must have standards "susceptible of objective measurement" (*Cramp v. Board of Public Instruction* (1961), 368 U.S. 278, 286, 7 L. Ed. 2d 285, 291, 82 S. Ct. 275, 280) or have standards "narrow, objective, and definite *** to guide the licensing authority" (*Shuttlesworth v. City of Birmingham* (1969), 394 U.S. 147, 151, 22 L. Ed. 2d 162, 167, 89 S. Ct. 935, 938). It has been stated that " '[p]recision of regulation must be the touchstone in an area so closely touching our most precious freedoms,' *N.A.A.C.P. v. Button*, 371 U.S. 415, 438 ***" (*Keyishian v. Board of Regents* (1967), 385 U.S. 589, 603, 17 L. Ed. 2d 629, 641, 87 S. Ct. 675, 684.) That is because "[t]he threat of sanctions may deter their exercise almost as potently as the actual application of sanctions." *NAACP v. Button* (1963), 371 U.S. 415, 433, 9 L. Ed. 2d 405, 418, 83 S. Ct. 328, 338.

It is well established by a series of decisions that ordinances controlling licenses to exercise first amendment rights are unconstitutional where the particular officials are vested with an unlimited or overly broad discretion to grant or deny the license.

In *Staub v. City of Baxley* (1958), 355 U.S. 313, 2 L. Ed. 2d 302, 78 S. Ct. 277, an ordinance of the city of Baxley, Georgia, made it an offense to "solicit" citizens of

the city to become members of any "organization, union or society" requiring fees or dues without first receiving from the mayor and the council of the city a permit which they must grant after consideration of "the character of the applicant, the nature of the *** organization for which members are desired to be solicited, and its effects upon the general welfare of [the] citizens of the City of Baxley." 355 U.S. 313, 321, 2 L. Ed. 2d 302, 310, 78 S. Ct. 277, 281.

Ordinances providing that "[t]he commission shall grant a written permit for such parade, procession or other public demonstration *** unless in its judgment the public welfare, peace, safety, health, decency, good order, morals or convenience require that it be refused" (*Shuttlesworth v. City of Birmingham* (1969), 394 U.S. 147, 149, 22 L. Ed. 2d 162, 166, 89 S. Ct. 935, 937), or permitting the denial of a license to show a moving picture where the board of censors is "of the opinion" the film is "of such character as to be prejudicial to the best interests of the people of said City" (*Gelling v. Texas* (1951), 343 U.S. 960, 96 L. Ed. 1359, 72 S. Ct. 1002), or providing that "[t]he Director of Public Safety is hereby authorized to refuse to issue said permit [for parades and public assemblies] when, after investigation of all of the facts and circumstances pertinent to said application, he believes it to be proper to refuse the issuance thereof" (*Hague v. Committee for Industrial Organization* (1939), 307 U.S. 496, 502 n.1, 83 L. Ed. 1423, 1429 n.1, 59 S. Ct. 954, 958 n.1) have all been declared unconstitutional.

The same result has been reached where the licensing authority was described: "[I]f after investigation the Mayor deems it proper or advisable he may issue a written permit to said person for the purpose of soliciting, selling, canvassing or census taking" (*Largent v. Texas* (1943), 318 U.S. 418, 419 n.1, 87 L. Ed. 873, 875 n.1, 63 S. Ct. 667 n.1); or "the Chief of Police shall refuse a permit in all

cases where the application, or further investigation made at the officer's discretion, shows that the canvasser is not of good character" (*Schneider v. State* (1939), 308 U.S. 147, 158, 84 L. Ed. 155, 163, 60 S. Ct. 146, 149); or "It shall be unlawful" to use sound amplification devices unless "the same be done under permission obtained from the Chief of Police" (*Saia v. New York* (1948), 334 U.S. 558 n.1, 92 L. Ed. 1574, 1576 n.1, 68 S. Ct. 1148, 1149 n.1).

An ordinance which forbade the distribution of literature of any kind without written permission from the city manager was void on its face because it struck "at the very foundation of the freedom of the press by subjecting it to license and censorship." (*Lovell v. City of Griffin* (1938), 303 U.S. 444, 451, 82 L. Ed. 949, 953, 58 S. Ct. 666, 669.) So also where the act prohibited allocating money for "any alleged religious, charitable or philanthropic cause, *** unless such cause shall have been approved by the secretary of the public welfare council" of the State, the law was void since the issuance of a certificate depended upon the secretary's opinion. *Cantwell v. Connecticut* (1940), 310 U.S. 296, 301-02, 84 L. Ed. 1213, 1217, 60 S. Ct. 900, 902.

The reason for striking down ordinances with either no standards or overly broad criteria is the real peril that the applicant for the license will be denied his rights to free speech and press through the exercise of the power of the licensing body to withhold or grant a license in its discretion.

Here this ordinance is wholly wanting in standards. The exercise of a constitutional right is dependent upon the unfettered discretion or whim of the mayor. He has an autocratic authority to grant or withhold the license. This is manifest by the fact its issuance is dependent "[u]pon receiving satisfactory proof" that the applicant is a "fit and proper person." What is "satisfactory proof"? What is

the mayor's concept of a "fit and proper person"? The whole matter is purely subjective. Yet constitutional rights are meaningless if they depend upon the discretion or whim of some official or administrator. The ordinance is so wanting in standards that it is void on its face.

Consider the pragmatic aspect. Here the constitutional infirmity of this law becomes real. It provides for a public hearing. At this hearing what evidence will the applicant introduce that he is a "fit and proper person"? What is the norm as to what constitutes "satisfactory proof"? The ordinance is so wanting in standards that the hearing it provides for is a vacuity. The United States Supreme Court's observation in *Shuttlesworth v. City of Birmingham* (1969), 394 U.S. 147, 150-51, 22 L. Ed. 2d 162, 167, 89 S. Ct. 935, 938, is apropos here:

"There can be no doubt that the Birmingham ordinance, as it was written, conferred upon the City Commission virtually unbridled and absolute power to prohibit any 'parade,' 'procession,' or 'demonstration' on the city's streets or public ways. For in deciding whether or not to withhold a permit, the members of the Commission were to be guided only by their own ideas of 'public welfare, peace, safety, health, decency, good order, morals or convenience.' This ordinance as it was written, therefore, fell squarely within the ambit of the many decisions of this Court over the last 30 years, holding that a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional. 'It is settled by a long line of recent decisions of this Court that an ordinance which, like this one, makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the

uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.' *Staub v. Baxley*, 355 U.S. 313, 322. And our decisions have made clear that a person faced with such an unconstitutional licensing law may ignore it and engage with impunity in the exercise of the right of free expression for which the law purports to require a license." (Footnotes omitted.)

Today we are particularly aware that the operation of motion picture theatres creates problems which necessitate regulation by public bodies. Certainly licensing of theatres is one vehicle of regulation. Supervision can be accomplished so long as there are objective standards governing the function of the licensing body. Whether these infringe upon constitutional freedoms, we leave to another day.

Whether defendants would qualify for licenses under a constitutionally drawn ordinance is not before us. In this type of first amendment case, it is the ordinance involved rather than the particular case which determines whether there is any impermissible intrusion upon those rights. Defendants could ignore the ordinance "and engage with impunity in the exercise of the right of free expression for which the law purports to require a license." *Shuttlesworth v. City of Birmingham* (1969), 394 U.S. 147, 151, 22 L. Ed. 2d 162, 167, 89 S. Ct. 935, 938.

The judgments of the circuit and appellate courts are reversed.

*Judgments reversed.*