# Illinois Official Reports

## Appellate Court

---

***Boucher v. 111 East Chestnut Condominium Ass'n*, 2018 IL App (1st) 162233**

---

| | |
|---|---|
| Appellate Court Caption | MICHAEL BOUCHER, Plaintiff-Appellant, v. 111 EAST CHESTNUT CONDOMINIUM ASSOCIATION, INC., an Illinois Not-for-Profit Corporation, and Members of Its Board of Directors, Specifically, ANTHONY MILAZZO, ANN MARIE DEL MONICO, CHERYL JANSEN, MIKE FISH, SERAP BUSH, ASIA GAJDEROWICZ, and GLENN GREENE, Defendants-Appellees. |
| District & No. | First District, Second Division<br>Docket No. 1-16-2233 |
| Filed | June 14, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CH-24832; the Hon. Thomas R. Allen, Judge, presiding. |
| Judgment | Affirmed in part; reversed and remanded in part. |
| Counsel on Appeal | Norman J. Lerum, of Chicago, for appellant.<br><br>Tressler LLP (Marshall Seeder and Lindsey D. Dean, of counsel), and Kovitz Shifrin Nesbit (Diane J. Silverberg, of counsel), both of Chicago, for appellees. |

PRESIDING JUSTICE NEVILLE delivered the judgment of the court, with opinion.
Justice Pucinski concurred in the judgment and opinion.
Justice Mason dissented, with opinion.


**OPINION**

¶ 1    After a condominium association imposed fines on unit owner Michael Boucher, Boucher filed a complaint alleging that (i) board members violated the Condominium Property Act (Act) (765 ILCS 605/1 *et seq.* (West 2012)) by penalizing him for expressing his opinions about condominium management, (ii) board members violated the Act by refusing Boucher's request for a copy of the recording of the meeting at which the board considered misconduct charges brought against Boucher, and (iii) the condominium association and the board members violated their fiduciary duties by withholding from Boucher evidence brought against him.

¶ 2    We hold that Boucher adequately alleged that the board members violated the Act when they penalized him for expressing his opinion about building management; Boucher presented evidence that could support a finding that the board members violated the Act when they denied his request for the recording of the disciplinary hearing; and Boucher presented evidence that could support a finding that the association and the board members breached their fiduciary duties when they failed to disclose to Boucher the evidence against him. Boucher did not answer three defendants who said they did not take part in the decision to deny his request for the video recording of the disciplinary hearing. Accordingly, we reverse the trial court's judgment and remand for further proceedings, except that we affirm the order granting summary judgment in favor of the three defendants who did not participate in the decision to withhold the recording of the hearing.


¶ 3                                    BACKGROUND
¶ 4    On August 23, 2013, the attorneys for the 111 East Chestnut Condominium Association (association) sent a letter to Boucher, a resident and owner of a unit in the 111 East Chestnut Condominium building, informing him that an employee of the association said that when she tried to get on an elevator with Boucher, Boucher "yelled profanities at the employee and demanded that she get off the elevator." Five days later, the same attorneys sent Boucher a second letter, informing him that another employee of the association said that when Boucher "requested a replacement [key] card, [he] used profanity and demanded that [he] pay cash for the replacement card, even though it was explained to [him] multiple times that the office does not accept cash payments. [His] behavior was described by witnesses as being rude and disrespectful." In both notices, the attorneys told Boucher his behavior violated the "Association's Declaration which specifically prohibits obnoxious or offensive activity from being carried on in any unit or in the common elements."

¶ 5    Boucher requested a hearing on the accusations. The board held the hearing on October 4, 2013. Boucher attended the hearing with his attorney and gave an account of what happened in the elevator incident and in the key card incident. At the hearing, Boucher's attorney asked to

review "all underlying evidence, information, and/or documents relating to the allegations." The board denied the request. Immediately after the meeting, Boucher's attorney sent to the association's attorney a letter, formally requesting "a copy of the video and audio tape which recorded the October 4, 2013 hearing." The association's attorney responded with a letter sent to Boucher and the board denying the request for the recording. Boucher's attorney responded with a second request for the recording and for the evidence against Boucher.

¶ 6 The property manager sent Boucher a letter, informing him that "the Board has determined that a fine penalty in the amount of $250 per complaint, for a total of $500, [would] be applied to [his] account." Boucher paid the fine, but in November 2013, he filed a complaint naming as defendants the association and all seven members of the board. He alleged in count I that he had "expressed criticism of certain management practices and about the performance of certain management employees over issues relating to *** sanitation of the building swimming pool, security practices *** [and] the practice of imposing arbitrary fines on unit owners" and that the board "penalized the plaintiff in retaliation for expressing his opinions *** about management practices" in violation of section 18.4(h) of the Act. 765 ILCS 605/18.4(h) (West 2012). Section 18.4(h) bars condominium boards from adopting rules that "impair any rights guaranteed by the First Amendment to the Constitution of the United States." 765 ILCS 605/18.4(h) (West 2012). In count II, Boucher alleged that the denial of his request for the video and audio recording of the October 4 meeting violated section 19(b) of the Act, which requires boards to make "minutes of all meetings" available to all members of the association. 765 ILCS 605/19(b) (West 2012). Count III rested on a charge that the defendants breached their fiduciary duties when they concealed from Boucher the evidence used against him.

¶ 7 Defendants filed a motion to dismiss the complaint for failure to state a cause of action. 735 ILCS 5/2-615 (West 2012). The circuit court granted the motion in part, dismissing count I "because there's no state action or government acting." The court also dismissed the association from count III because "a corporation *** cannot be held to have breach[ed] fiduciary duties."

¶ 8 Defendants filed their answer to counts II and III, and the parties engaged in discovery. Boucher and all of the board members but one sat for their depositions. Boucher filed a motion to compel the final board member, Cheryl Jansen, to appear for a deposition. The circuit court denied the motion to compel.

¶ 9 All parties filed motions for summary judgment. Defendants sought judgment on count II on grounds that the video recording of the October 4 meeting did not constitute "minutes," and therefore the decision to deny Boucher's request for the video did not violate section 19 of the Act. For count III, the defendants explained in detail how thoroughly Boucher deserved the fines for obnoxious and offensive activity. Some of the defendants, in their depositions, testified that apart from the elevator incident and the key card incident, Boucher had in the past used sexist, racist, and scatological language; insulted employees; and "exposed his scrotum to people in a Board meeting." One of the board members testified that the board took into account the prior incidents when deciding to fine Boucher. Defendants also argued that the business judgment rule and the condominium declaration protected them from liability.

¶ 10 The circuit court granted defendants summary judgment on counts II and III of the complaint. Boucher now appeals.

ANALYSIS

We review *de novo* the dismissal of count III against the association and count I for failure to state a claim for relief. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). We also review *de novo* the order granting defendants' motion for summary judgment on counts II and III. *Lake County Grading Co. v. Village of Antioch*, 2014 IL 115805, ¶ 18.

## Section 18.4(h)

The circuit court held that count I, which alleged a violation of section 18.4(h) of the Act, failed to state a claim for relief because only state action can violate the first amendment, and the association did not qualify as a state actor. The circuit court interpreted the statutory phrase, "rights guaranteed by the First Amendment to the Constitution of the United States," to refer not to freedom of religion, freedom of speech, and "the right of the people peaceably to assemble" (U.S. Const., amend. I), but rather as a reference to the right to bar Congress from making a law abridging freedom of religion, freedom of speech, and the right to assemble. Thus, on the circuit court's interpretation of section 18.4(h), the section applies only when a government actor, like a municipality, controls the board of directors for a condominium. See *City of Chicago v. Groffman*, 68 Ill. 2d 112, 120-24 (1977). The circuit court's interpretation raises the question: did the legislature adopt section 18.4(h) to stave off the threat of municipalities and other governmental entities buying condominium buildings so that they could install a board that would prevent the residents of those buildings from expressing political opinions?

We look to the legislative history. In support of the provision, Senator Silverstein explained that, under section 18.4(h),

> "a board of managers of condo property may not institute any rules or regulations that will prohibit *** reasonable accommodation for religious practices, including the attachment of religious objects on the *** door posts of a condominium unit. *** [T]wo condominium associations *** prohibited Jewish residents from putting a mezuzah [on their door posts]." 94th Ill. Gen. Assem., Senate Bill 2165, 2006 Sess., Transcript Senate 2/22/2006 at 19.

According to the 2000 version of the Historical and Practice Notes for section 18.4(h):

> "[A] board of managers could not prohibit unit owners or their tenants from knocking on neighbors' doors for purposes of political campaigning. *** [The guarantee of constitutional rights was inserted] in response to boards who were attempting to severely restrict first amendment activity of owners and occupants, especially political activity. This limitation is modeled on provisions in the Florida Condominium Act." 765 ILCS Ann. 605/18.4, Historical and Practice Notes, at 109 (Smith-Hurd Supp. 2000).

The Florida Condominium Act provided, "No entity or entities shall unreasonably restrict any unit owner's right to peaceably assemble or right to invite public officers or candidates for public office to appear and speak in common elements, common areas, and recreational facilities." Fla. Stat. § 718.123 (1983).

The circuit court's interpretation of section 18.4(h) ensures that the section would not apply in the situations specified in the legislative history. Any private condominium association could forbid any political activity and any religious display in the condominium

because the private condominium association would not count as a state actor. We must not interpret statutes in a manner that makes them meaningless. *Niven v. Siqueira*, 109 Ill. 2d 357, 365 (1985); *Cummings v. City of Waterloo*, 289 Ill. App. 3d 474, 480 (1997). We must interpret statutes in light of the problems the legislature intended to address. *In re Annexation of Territory to the City of Park Ridge*, 260 Ill. App. 3d 384, 389 (1994). We hold that section 18.4(h) "forbids a board from 'impair[ing] any rights guaranteed by the First Amendment,' not from violating the Amendment itself." *Goldberg v. 400 East Ohio Condominium Ass'n*, 12 F. Supp. 2d 820, 824 (N.D. Ill. 1998) (quoting 765 ILCS 605/18.4(h) (West 1998)). Under section 18.4(h), condominium boards must not adopt or enforce any rules that prohibit the free exercise of religion, abridge the freedom of speech, or abridge the right to peaceably assemble. See U.S. Const., amend. I.

¶ 19    Defendants argue that this court should affirm the dismissal of count I because the association cited part of the condominium declaration, and not a document titled "rules," as the basis for its sanctions against Boucher. To state a cause of action for violation of first amendment right to free speech, a plaintiff must allege only a violation of the right to freedom of speech committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Although the first amendment says "Congress shall make no law *** abridging the freedom of speech" (U.S. Const., amend. I), plaintiffs need not prove the enactment of laws abridging their rights. Thus, in *Cooper v. Pate*, 378 U.S. 546 (1964), the Supreme Court reversed a Court of Appeals for the Seventh Circuit decision and held that the plaintiff stated a cause of action for violation of his right to exercise his religion, even though he cited no law or rule that the defendant purported to enforce. See *Cooper v. Pate*, 324 F.2d 165 (7th Cir. 1963); see also *West*, 487 U.S. at 48.

¶ 20    Looking again to the legislative history, we conclude that a plaintiff can state a statutory cause of action against a condominium association by alleging that he put up an unobtrusive religious symbol on his door as an expression of his religion and the association told him to take it down. The association may have violated the plaintiff's rights, even if it never adopted any pertinent rule, regulation, or declaration. Similarly, a plaintiff states a cause of action against an association for violation of his right to free speech by alleging that the association precluded him from expressing his political opinion or that the association penalized him for expressing his opinions.

¶ 21    Boucher alleged that the association and its directors fined him because he expressed his opinions criticizing the board's management of the condominium. We hold that he has adequately stated a cause of action for violation of section 18.4(h) of the Act. Accordingly, we reverse the dismissal of count I.

¶ 22                                    Section 19

¶ 23    In count II, Boucher sought to state a cause of action for violation of section 19 of the Act. Section 19 provides:

>      "(a) The board of managers of every association shall keep and maintain the following records ***:

                                    * * *

>      (4) minutes of all meetings of the association and its board of managers ***[.]

                                    * * *

(b) Any member of an association shall have the right to inspect, examine, and make copies of the records described in subdivision[ ] *** (4) *** of subsection (a) of this Section *** at any reasonable time or times[.]" 765 ILCS 605/19 (West 2012).

¶ 24 The defendants admit that they made a video and audio recording of the October 4 hearing. The Act defines a "Meeting of Board of Managers" as "any gathering of a quorum of members of the Board *** held for the purpose of conducting board business." 765 ILCS 605/2(w) (West 2012). A quorum of board members attended the October 4 hearing, and, because they invoke the business judgment rule to defend the acts taken at and as a consequence of that hearing, the defendants implicitly admit that in the hearing they conducted board business. The business of the board includes hearing evidence concerning possible disciplinary actions against members, as part of the board's business of maintaining civil relations between members and between members and association employees. See *Walker v. Briarwood Condo Ass'n*, 644 A.2d 634, 636 (N.J. Super. Ct. App. Div. 1994). Thus, the October 4 hearing counted as a meeting of the board.

¶ 25 The Act required the board to keep and maintain minutes of the October 4 meeting. The board points out that section 18(a)(9) of the Act required the board to permit members to record open meetings, but no section required the board to permit Boucher to record the closed meeting in which the board heard Boucher's position on the elevator incident and the key card incident. See 765 ILCS 605/18(a)(9) (West 2012). The observation does not affect the statutory mandate that the board must maintain its own minutes of the meeting. Section 19 requires minutes for "all meetings," with no exception for closed meetings. 765 ILCS 605/19(a)(4) (West 2012).

¶ 26 The defendants contend that the video recording cannot count as minutes because the recording is not written. They cite Black's Law Dictionary, which, using the meaning of the term from Scots law, defines "minutes" as "[w]ritten forms for preserving evidence." Black's Law Dictionary 1012 (7th ed. 1999). Illinois courts have held that minutes serve as evidence of a board or agency's actions. *O'Malley v. Village of Palos Park*, 346 Ill. App. 3d 567, 581-82 (2004). The video and audio recording here serves as the only evidence of the board's acts at the meeting, as the defendants have neither presented nor alleged that they maintained any written record of the October 4 meeting. Because the board has met its statutory duty of keeping and maintaining a record of the October 4 meeting only by making the video and audio recording of that meeting, the recording counts as the minutes of the meeting. When a board has made a video and audio recording of its proceedings, the recording serves the purpose of minutes, by preserving evidence of the board's actions. See *O'Malley*, 346 Ill. App. 3d at 581-82.

¶ 27 Defendants contend that despite the language of section 19, the statute cannot require the production of minutes of the closed meeting to hear charges of misconduct because the legislature must have intended such meetings to remain confidential. See 765 ILCS 605/18(a)(9) (West 2012). But the Act unambiguously mandates that the board must maintain minutes of all meetings, without exception, and grants members the right to inspect and copy those minutes. 765 ILCS 605/19(a)(4) (West 2012). Thus, even though disciplinary proceedings may take place in closed meetings, the Act protects the right of all condominium unit owners to know what kinds of allegations of misconduct have led to disciplinary proceedings against members, what evidence the board heard and relied on in such proceedings, and what penalties the board imposed for misconduct. Defendants ask us to

ignore the express language of section 19 so that the board can deprive unit owners of the information about disciplinary proceedings that the owners most need. We reject defendants' argument and instead apply the statute as written.

¶ 28 Boucher has presented evidence that could support a finding that the board denied his request for the minutes of the October 4 hearing. Accordingly, we reverse the circuit court's order granting defendants' motion for summary judgment on count II of Boucher's complaint.

¶ 29 Three board members—Ann Marie Del Monico, Cheryl Jansen, and Asia Gajderowicz—filed a separate brief on appeal, arguing that they should not bear liability for the decision not to give Boucher the recording of the meeting because they did not participate in that decision. Boucher, in his briefs on appeal, has not responded to the argument, and he does not contest the evidence they cite to show that they took no part in the decision. "Points not argued are waived ***." Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013). Accordingly, we affirm the dismissal of count II against Del Monico, Jansen, and Gajderowicz.

¶ 30                                    Fiduciary Duty
¶ 31                                  A. Duty to Disclose
¶ 32 The circuit court granted summary judgment in favor of the board members on count III, and it dismissed count III as to the association for failure to state a claim for relief. Boucher contends that he has presented evidence that could support a finding that the board members breached their fiduciary duties when they refused to show him the evidence against him.

¶ 33 The Act establishes that the board members must "exercise the care required of a fiduciary of the unit owners." 765 ILCS 605/18.4 (West 2012). "Broadly worded constitutional and statutory provisions necessarily have been given concrete meaning and application by a process of case-by-case judicial decision in the common-law tradition." *Northwest Airlines, Inc. v. Transport Workers Union of America*, 451 U.S. 77, 95 (1981). Like somewhat imprecise language in other statutes, the phrase "the care required of a fiduciary" is "left open to development on a case by case basis." H.R. Rep. No. 95-595, *as reprinted in* 1977 U.S.C.C.A.N. 5787; see also *Brody v. Finch University of Health Sciences/The Chicago Medical School*, 298 Ill. App. 3d 146, 159 (1998) ("our legislature intended that any gaps in the Consumer Fraud Act [(815 ILCS 505/1 *et seq*. (West 1998))] be supplied by judicial construction"). We look to Illinois common law of fiduciary duties to help us flesh out the meaning of the Act.

¶ 34 "A fiduciary relationship exists where there is special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence. It exists where confidence is reposed on one side and resulting superiority and influence is found on the other." *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 45 (1994). The scope of the relationship defines the fiduciary's duties. *Crampton v. Crampton*, 2017 IL App (3d) 160402, ¶ 27; *Graham v. Mimms*, 111 Ill. App. 3d 751, 760-61 (1982).

¶ 35 Directors of a condominium association owe fiduciary duties to unit owners similar to the duties corporate directors owe to shareholders, insofar as the unit owners trust the directors to use the owners' money for maintenance, repair, and improvements to the building. See *Duffy v. Orlan Brook Condominium Owners' Ass'n*, 2012 IL App (1st) 113577, ¶ 18. The unit owners and residents also entrust the board to make decisions on behalf of all members of the

association concerning the conduct of association members in and around their homes. Association members must, by statute, permit the board to "have access to each unit" (765 ILCS 605/18.4(j) (West 2012)), a requirement usually met by rules providing that association employees must have keys to every unit. When the condominium rules include such a provision, the unit owners trust the association employees and the board members with unlimited access to the owners' and residents' homes, which the employees and board members can use without notice to the owners and residents. The high degree of trust the members must accord to the association imposes on the directors very strict fiduciary duties, particularly with respect to decisions concerning the unit owners' and residents' conduct in their home. *Janowiak v. Tiesi*, 402 Ill. App. 3d 997, 1008-10 (2010) (higher degree of trust in fiduciary entails higher degree of fiduciary duties of loyalty and good faith).

¶ 36       Thus, each board member here has strict duties to treat the unit owners "with the utmost candor, rectitude, care, loyalty, and good faith—in fact to treat [them] as well as [he] would treat himself." *Burdett v. Miller*, 957 F.2d 1375, 1381 (7th Cir. 1992). When investigating charges of misconduct against a unit owner, the duty of candor imposes on the board members an obligation "of full, fair, complete, and timely disclosure of material facts" (*Han v. Yang*, 931 P.2d 604, 615 (Haw. 1997)) concerning all allegations against the owner that may provide a basis for imposition of a penalty. A court may hold fiduciaries liable for failure to disclose information to their principals. See *Shaw v. Weisz*, 339 Ill. App. 630 (1950).

¶ 37       Boucher has presented evidence that the board refused to show him the complaint an employee wrote concerning the key card incident. Boucher also presented evidence that the board refused to show him the video recording of the elevator incident. The board's refusals could support a finding that the board members violated their fiduciary duty to disclose, and in so doing, the board members ensured that they would not hear significant evidence before deciding whether to fine Boucher. The board members did not hear Boucher's explanation of what the video showed because they did not show him the video. The board members did not hear Boucher's response to the letter or the staff report because they refused to show him the letters or the staff report.

¶ 38       We find this case similar to *Congress Street Condominium Ass'n v. Anderson*, 112 A.3d 196 (Conn. Ct. App. 2015). The *Anderson* court found that a condominium association did not properly assess fines upon a unit owner because the association failed to provide the unit owner with an opportunity to be heard in a fair manner. *Anderson*, 112 A.3d at 200. The *Anderson* court held that before imposing fines, the association had a duty to give the accused unit owner "an opportunity to know the facts on which the agency is asked to act, to cross-examine witnesses and to offer rebuttal evidence." (Internal quotation marks omitted.) *Anderson*, 112 A.3d at 200.

¶ 39                                         B. The Board's Defenses

¶ 40       The board members argue that this court should affirm the decision to grant their motion for summary judgment on count III for four reasons: first, Boucher filed no response to their affirmative defenses; second, the board members met all the requirements of the Act; third, under the business judgment rule, the court cannot find them liable; and fourth, the condominium declaration protects them from liability.

¶ 41                    1. Failure to Respond to Affirmative Defenses

¶ 42    In their affirmative defenses, defendants charged Boucher with numerous acts of misconduct not mentioned in the notices sent to Boucher in August 2013. We do not see how Boucher's misconduct shows that the board members fulfilled their fiduciary duties. Even if we assume the truth of all the new allegations in the affirmative defenses, we find no grounds for granting the defendants' motion for summary judgment on count III.

¶ 43                                  2. Section 18.4(*l*)

¶ 44    In support of their argument that they met the requirements of the Act, defendants rely on section 18.4(*l*), which provides that the board has the power, "after notice and an opportunity to be heard, to levy reasonable fines for violation of the declaration, by-laws, and rules and regulations of the association." 765 ILCS 605/18.4(*l*) (West 2012). The provision does not negate the provision in the same section that imposes fiduciary duties on all board members. 765 ILCS 605/18.4 (West 2012). We find no conflict between the two provisions. The board members' fiduciary duties remain subject to judicial interpretation. *Northwest Airlines*, 451 U.S. at 95. A board may reduce the board members' fiduciary duties by reducing the degree to which unit owners must trust the board. See *Burdett*, 957 F.2d at 1381. Section 18.4(*l*) establishes that no matter how courts interpret fiduciary duties, and no matter how much the board does to reduce their duties, the board must provide, at a minimum, notice and an opportunity to be heard before imposing fines on any unit owners. 765 ILCS 605/18.4(*l*) (West 2012). The section does not imply that board members who provide such notice and opportunity have fulfilled all their fiduciary duties. 765 ILCS 605/18.4 (West 2012).

¶ 45    Also, the notice required by section 18.4(*l*) placed a duty on board members to inform the accused unit owner of the charges against him. See *Local 165, International Brotherhood of Electrical Workers v. Bradley*, 149 Ill. App. 3d 193, 212 (1986). Some of the defendants in their depositions admitted that, in assessing the fines against Boucher, they relied on alleged misconduct not mentioned in the letters sent to Boucher in August 2013. The defendants' motion for summary judgment also extensively recounts, as a basis for the fines against Boucher, allegations of misconduct not mentioned in any notice sent to Boucher in connection with the October 4 hearing. Thus, the evidence in the record can support a finding that, because the board did not give Boucher notice of all the charges they intended to consider in connection with possible discipline, the board did not meet even the minimal requirements of section 18.4(*l*).

¶ 46                                3. Business Judgment Rule

¶ 47    Next, defendants invoke the business judgment rule. Boucher argues that the case does not involve a business judgment at all because disciplinary decisions should not count as business judgments. We disagree. Establishing and enforcing rules for courteous interactions between unit owners, and between unit owners and association employees, forms part of the business of the condominium association. See *Walker*, 644 A.2d at 636.

¶ 48    The business judgment rule permits a trier of fact to presume that a corporate board made its decisions "on an informed basis, in good faith and in an honest belief that the actions taken are in the best interest of the company." (Internal quotation marks omitted.) *Spillyards v. Abboud*, 278 Ill. App. 3d 663, 676 (1996). A plaintiff may overcome the presumption by presenting evidence that the defendants failed "to inform themselves, prior to making the

business decision, of all material information reasonably available to them." *Spillyards*, 278 Ill. App. 3d at 681-82.

¶ 49 Here, Boucher showed that the board members withheld from him the video of the elevator incident and the employee's letter concerning the key card incident, thereby depriving themselves of readily available information as to how Boucher would respond to the evidence. Also, the evidence in the record could support a finding that the board failed to inform Boucher of some of the charges the members took into account in fining Boucher, thereby further depriving themselves of his response to the charges. We find that the business judgment rule does not justify the order granting defendants' motion for summary judgment on count III.

¶ 50                     4. Exculpatory Clause

¶ 51 The defendants also rely on the condominium declaration, which provides:

"The Individual Directors, Board, [and] officers of the Association *** shall not be liable to the Unit Owners for any mistake in judgment or for any other acts or omissions of any nature whatsoever as such individual Directors, Board or officers, except for any acts or omissions found by a court to constitute gross negligence, willful misconduct or fraud."

¶ 52 The Act establishes that boards may adopt condominium declarations "not inconsistent with the provisions of this Act." 765 ILCS 605/4(i) (West 2012). If courts interpret the exculpatory clause in the declaration so broadly that it excuses decisions to withhold material information from unit owners, the clause conflicts with the Act's provision that board members owe fiduciary duties to unit owners. 765 ILCS 605/18.4 (West 2012). While the declaration may limit liability for business decisions made in good faith, it cannot limit liability for violations of the duties of honesty, candor, full disclosure, loyalty, and good faith. See *Sherman v. Ryan*, 392 Ill. App. 3d 712, 730 (2009). If directors of a condominium seek to reduce their fiduciary duties or their liability for breach of those duties, the directors must reduce the extent to which the unit owners must trust them. See *Burdett*, 957 F.2d at 1381. The board cannot maintain both (i) that the unit owners must trust them to a very high degree with power over their homes and (ii) that they have essentially no potential liability for breach of the fiduciary duties that result from their power over the unit owners. Insofar as the exculpatory clause in the declaration effectively reasserts the protections of the business judgment rule, like the business judgment rule, the clause does not justify the order granting summary judgment here. If the exculpatory clause negates the defendants' fundamental fiduciary duties of honesty and loyalty, where the duty of loyalty entails a duty of full disclosure (see *Janowiak*, 402 Ill. App. 3d at 1008), the exculpatory clause conflicts with the Act, and the Act establishes that the clause becomes ineffective. Thus, the exculpatory clause cannot justify the order granting the summary judgment motion here.

¶ 53                     C. Association Liability

¶ 54 The circuit court granted the association's motion to dismiss count III based on the court's holding that the association cannot have fiduciary duties. Illinois courts have held that, where individual board members breach their fiduciary duties, any liability that may result due to the individual defendants' breach may extend to the association itself. *Wolinsky v. Kadison*, 114 Ill. App. 3d 527, 533 (1983); *Goldberg v. Astor Plaza Condominium Ass'n*, 2012 IL App (1st) 110620, ¶ 62. The imposition of fiduciary duties on the association ensures that when a unit

owner can show that some association employee or board member has violated fiduciary duties, the unit owner may recover from the association, even if the unit owner cannot specify which employee or board member breached fiduciary duties. The association would then bear the burden of identifying the tortfeasor and recovering from that person. See *Washington Gaslight Co. v. District of Columbia*, 161 U.S. 316, 328 (1896) (noting "the right of a master to recover over the damages which he had been obliged to pay in consequence of a servant's negligence"). Following *Wolinsky* and *Goldberg*, we find that Boucher has stated a viable claim against the association for breach of its fiduciary duties.

¶ 55     The circuit court will have an opportunity on remand to address anew the question of whether to allow Boucher to take Jansen's deposition. We need not address the issue here.

¶ 56                                    Response to Dissent

¶ 57     The dissent states at great length facts not relevant to this court's review of the dismissal of count I for failure to state a claim for relief.

> "A section 2-615 motion to dismiss (735 ILCS 5/2-615 (West 2002)) challenges the legal sufficiency of a complaint based on defects apparent on its face. *** In reviewing the sufficiency of a complaint, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. [Citation.] We also construe the allegations in the complaint in the light most favorable to the plaintiff. [Citation.] Thus, a cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006).

> "No cause of action should be dismissed on the pleadings unless it clearly appears that no set of facts can be proved to sustain it. [Citation.] We are possessed by a state of considerable dubiety as to whether plaintiffs' allegations can be sustained at trial, but this is clearly an insufficient reason to deny them their day in court." *Golden Rule Life Insurance Co. v. Mathias*, 86 Ill. App. 3d 323, 332-33 (1980).

¶ 58     The facts stated in paragraphs 68 through 74 of the dissent, all alleged in defendants' pleadings, not plaintiff's, provide grounds for granting summary judgment in favor of the defendants. Those facts cannot justify dismissal of count I under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2012)). If we impose on plaintiffs a requirement that, in order to state a cause of action for violation of section 18.4(h) of the Act, the plaintiff must anticipate and refute all defenses to the claim, the impossible burden would entirely defeat the admirable goal of the Act—to discourage the directors of condominiums from abusing their positions of extreme trust in ways that deprive residents of their right to express opinions, their right to assemble peaceably, and their right to practice their religions. Count I states a cause of action for violation of section 18.4(h) of the Act, even though Boucher will likely prove unable to win a judgment on count I.

¶ 59     For count II, the dissent rejects the Act's explicit definition of a "meeting," and uses instead a definition with language that does not come from the Act. The Act defines a "Meeting of Board of Managers" as "any gathering of a quorum of members of the Board *** held for the purpose of conducting board business." 765 ILCS 605/2(w) (West 2012). Notice to members plays no part in the definition. A request by a member for the meeting does not make the gathering of members of the board any less of a meeting.

¶ 60    The dissent also finds judgment for defendants on count III justified, even though the defendants admitted that they did not disclose to plaintiff the evidence they considered against him. The dissent would have the court override the fiduciary duty to disclose, to reward the defendants for treating plaintiff as an adversary even before he filed the lawsuit—while they maintained control over the expenditure of his funds for the building, while they retained authority to restrict his behavior in and around his home, and while they had unrestricted access to his home. When trustees find themselves in an adversarial posture with the *cestuis qui* trust, the trustees must leave the trust relationship. When lawyers find themselves in an adversarial posture with their clients, they must no longer represent those clients. The fiduciary must not resort to adversarial posturing in the context of the fiduciary relationship. The admitted failure to disclose evidence may warrant summary judgment in Boucher's favor on count III. The record cannot justify the award of a judgment in favor of the board on count III.

¶ 61    The dissenter fears that if the court enforces the Act as written, courts will "become embroiled in the internal affairs of condominium associations." *Infra* ¶ 82. When the legislature adopts legislation that may require judicial enforcement, the legislature effectively directs the court to become embroiled in resolution of the problem the legislature has addressed. The Act here will almost certainly not embroil the courts in frequent lawsuits over board members' breaches of fiduciary duties or violations of sections 18.4(h) and 19 of the Act. Only foolhardy persons, or persons deeply aggrieved by intolerable misconduct, file lawsuits against persons who have unfettered access to their homes.

¶ 62    The legislature wrote the Act in a way that discourages abuse of the position of extreme trust that all members of condominium boards hold. The dissent would rewrite the Act to undo the legislature's work and instead leave unpunishable breaches of fiduciary duty and other abuses of power by board members. The business judgment rule protects the business judgments made by board members. But board members have fiduciary duties of honesty and full disclosure to all residents and owners of the condominiums they manage—even if the residents or owners are consistently rude, arrogant, and obnoxious. Persons who cannot bring themselves to disclose honestly to any owner all that they find out about the owner and the owner's unit should not take on positions of extreme trust. They should not have unlimited access to the homes of the owners and residents. They should not serve as board members.

¶ 63                                        CONCLUSION

¶ 64    Boucher sufficiently alleged a violation of section 18.4(h) of the Act by alleging that the board fined him for expressing his opinions about the management of the condominium. The Act requires the board to maintain minutes recording board actions at every meeting, including closed meetings. Because the board kept no record of the October 4 meeting other than a video and audio recording, the board's recording constitutes the minutes of the meeting. Boucher presented sufficient evidence to create an issue of fact as to whether the board violated section 19 of the Act by refusing his request for the minutes of the meeting. Boucher presented sufficient evidence to create an issue of fact as to whether the association and the board members violated their fiduciary duties to Boucher when they withheld from him the evidence that provided the basis for their decision to fine him. Defendants Del Monico, Jansen, and Gajderowicz presented uncontested evidence that they did not take part in the decision to deny Boucher's request for the minutes of the October 4 meeting. Accordingly, we affirm the

decision to grant Del Monico, Jansen, and Gajderowicz's motion for summary judgment on count II of Boucher's complaint. In all other respects, we reverse the trial court's judgment and remand for further proceedings.

¶ 65        Affirmed in part; reversed and remanded in part.

¶ 66        JUSTICE MASON, dissenting:

¶ 67        I respectfully dissent from my colleagues' conclusion that Boucher is entitled to pursue claims against the association and its board of managers for (i) retaliating against him for exercising his first amendment right to complain about management of the building, (ii) failing to produce the video recording of his disciplinary hearing, and (iii) breaching their fiduciary duties to him by improperly charging him with violations, assessing penalties for those violations, and "concealing evidence" during his disciplinary hearing. Condominium associations are mini-democracies that depend on the agreement of association members who voluntarily join the association to adhere to a common "constitution," consisting of the association's declaration. That document, to which all unit owners are bound, governs members' use and enjoyment of individually-owned condominium units as well as shared elements jointly owned by all. And condominium associations, like some democracies, can be utterly dysfunctional. This is particularly true when one association member decides that the constitution to which he agreed to be bound when he voluntarily became a member of the association simply does not apply to him.

¶ 68        Michael Boucher and his wife purchased a unit at 111 East Chestnut and thereby voluntarily became members of the association. 111 East Chestnut's Declaration, predating Boucher's purchase, contains section 23(e), which reads:

>        "No obnoxious or offensive activity shall be carried on in any Unit or in the Common Elements, nor shall anything be done therein, either willfully or negligently, which may be or become an annoyance or nuisance to other Unit Owners or occupants or which disrupts any other Unit Owner's reasonable use and enjoyment of the Property."

In addition, the association's rules and regulations, promulgated by the board pursuant to its authority, prohibit "abusive behavior toward any building employee."

¶ 69        For years prior to the events giving rise to Boucher's lawsuit, Boucher repeatedly engaged in (i) obnoxious and offensive activity, under any reasonable definition of those terms, in the association's common elements; and (ii) abusive behavior toward building employees, both of which gave rise to numerous complaints from unit owners and building employees alike. For example, Boucher, who concedes he is "aggressive with everyone," admitted to having referred to Genine Campbell, a female African-American doorperson, as a "cocky bitch" in her presence, but did not remember whether he asked a male doorperson if he was "sexing the big girl," again referring to Campbell. On another occasion, a female employee of the management company working the overnight shift reported that at 2 a.m., Boucher engaged her in a discussion regarding enemas.[1] As only the employee and Boucher were present and given the late hour, the employee found Boucher's conduct "creepy." When Boucher first met board

_____

[1] In his deposition, Boucher claimed he couldn't remember the conversation, but when asked if it was "possible" that it occurred, responded "[w]ould you repeat to me what an enema versus a colonoscopy is?"

president Anthony Milazzo at a board meeting, he yelled, "Hey, dago." Boucher does not believe the word "shit" is profanity.

¶ 70    Prior to 2013, Boucher's persistent offensive comments resulted in two sexual harassment claims filed by Campbell against her employer with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission.

¶ 71    Further, on two occasions prior to the events giving rise to his lawsuit, Boucher was warned about his behavior. On September 17, 2009, Steven P. Hanna, assistant vice president of the association's management company—then known as Draper & Kramer—wrote to Boucher, relaying a complaint by a female employee that during a conversation regarding an automatic external defibrillator purchased by the building, Boucher lifted his shirt and referred to his chest as his "deliberators."[2] Hanna also informed Boucher that he had received other complaints from residents and employees regarding Boucher's repeated use of offensive language in the course of his conversations with them. Two years later, on September 20, 2011, Tom Taylor, vice president of DKCondo, informed Boucher that he had received complaints from unit owners and association employees regarding Boucher's "demeaning, insulting and disrespectful" comments to them. In 2012, the board censured Boucher for his conduct towards Campbell.

¶ 72    In 2013, two additional incidents involving Boucher occurred. On July 23, 2013, Boucher arrived in the management office to replace a fob used to operate the elevators. When the employee asked Boucher what happened to the old fob, Boucher replied, "It took a shit." Boucher then tried to pay cash for the replacement, but the employee informed him that the office did not accept cash and that he could either pay by check or add the charge to his monthly assessment. According to the employee, Boucher began talking loudly and was rude and offensive. In a letter dated July 29, 2013, Boucher was advised by Robert Graf, executive vice president of Sudler Property Management (who by then was managing the building), that his interaction with the employee was "completely inappropriate and frankly offensive." Graf further stated: "Shouting at staff to make special accommodations in our financial policy is not acceptable." No response from Boucher to this letter is in the record. On August 20, 2013, Boucher was on the elevator when Ms. Campbell, the doorperson, attempted to board. Boucher became angry and did not want to ride the elevator with Campbell. Campbell reported that Boucher ordered her not to enter the elevator because she was a "fucking employee." A security camera captured soundless video of the incident. A board member who viewed the video described what she saw: "[Y]ou can see him yelling. You can almost see the spit coming out of his mouth, he was so furious with her, pointing at her. *** You could see his fury just by watching the video."

¶ 73    Both incidents prompted letters from the association's counsel, informing Boucher that his behavior violated section 23(e) of the declaration and that the board would consider an appropriate fine for the violations. The two letters also advised Boucher that he could request a hearing to contest the validity of the charges within 30 days, which he did.

¶ 74    At the hearing on October 4, 2013, which was videotaped, Boucher said nothing. His lawyer spoke for about 20 minutes. Following the hearing, the Board convened a closed session and voted to fine Boucher $250 for each incident.

---

[2]Boucher denied lifting his shirt, but clarified that he used the word "defibrillators."

¶ 75        Against this backdrop, Boucher's claim in count I of his amended complaint—that the August 2013 charges against him were motivated by the exercise of his first amendment right to complain about building management—is specious. Boucher's amended complaint contained no factual allegations supporting the conclusion that the August 2013 notices were prompted by or bore any relationship to Boucher's alleged complaints two months earlier about issues such as short-term rentals of units, pool sanitation, or the imposition of "arbitrary" fines on unit owners. See *Dempsey v. Johnson*, 2016 IL App (1st) 153377, ¶ 26 (to state a cause of action in a first amendment retaliation claim, plaintiff must allege facts indicating a causal nexus between the protected activity and the alleged retaliatory conduct); *Thomas v. Walton*, 461 F. Supp. 2d 786, 796 (S.D. Ill. 2006) (in first amendment retaliation case, summary judgment was properly granted to defendant where plaintiff "failed to produce any evidence that his alleged protected speech was a substantial, motivating factor for the alleged retaliation").

¶ 76        In light of the detailed complaints it received in August 2013, the board had little choice but to cite Boucher with violations of section 23(e), not only because his conduct so clearly violated that provision, but also because the board's failure to act would have violated its duty to the other unit owners and management company employees to enforce the Association's Declaration and rules. Indeed, Milazzo testified that at one point he became concerned "that we as a board would be negligent if we took no action" to address Boucher's behavior.

¶ 77        Circumstances like these are precisely why the board's decisions are protected by the business judgment rule. "[A]bsent evidence of bad faith, fraud, illegality or gross overreaching, courts are not at liberty to interfere with the exercise of business judgment by corporate directors." *Feliciano v. Geneva Terrace Estates Homeowners Ass'n*, 2014 IL App (1st) 130269, ¶ 39; see also *Goldberg v. Astor Plaza Condominium Ass'n*, 2012 IL App (1st) 110620, ¶ 63. Further, courts afford discretion to condominium boards in interpreting and enforcing an association's declaration. *Apple II Condominium Ass'n v. Worth Bank & Trust Co.*, 277 Ill. App. 3d 345, 350 (1995). Other than his conclusory allegation that the board was motivated to charge him based on his complaints about management of the building rather than his offensive conduct, Boucher offers no reason for us to overlook or second-guess the board's business judgment in determining that he should be fined.

¶ 78        Boucher's own testimony makes clear that he is calling into question board members' judgment in handling the complaint. Referring to the elevator incident, Boucher stated: "As a manager, I would have called both people in and found out what the story was." According to Boucher, at his hearing, the people complaining about him should have been called in to give their stories and he should have been able to give his version of events and the board then should have "draw[n] a conclusion from there." Although Boucher disagrees with the board's decision to fine him, he cannot in good faith contest that (i) board members informed themselves of the basis for the charges against him in advance of the hearing and (ii) since all board members attended the hearing and heard, through Boucher's counsel, his version of events, they were fully informed in advance of making their decision. Especially in light of Boucher's long history of offensive and insulting conduct and the failure of previous warnings to dissuade his bullying behavior, the business judgment rule shields the board's action from further examination. *Stamp v. Touche Ross & Co.*, 263 Ill. App. 3d 1010, 1017 (1993) (plaintiff failed to plead the absence of business judgment where "[n]owhere in the complaint does plaintiff allege that the defendants did not make informed judgments or use due care in arriving

- 15 -

at those judgments"); *Feliciano*, 2014 IL App (1st) 130269, ¶ 40 (trial court properly granted summary judgment to homeowners' association on the basis of the business judgment rule, since plaintiffs' allegations of bad-faith decisionmaking were mere "conjecture").

¶ 79     And the protection afforded the board's action under the business judgment rule is mirrored in the provisions of the Declaration, which limit the liability of board members to unit owners "for any mistake in judgment or for any other acts or omissions," with the exception of "acts or omissions found by a court to constitute gross negligence, willful misconduct or fraud." Given the record here, no reasonable finder of fact could conclude that the board's decision to sanction Boucher for his offensive conduct fell into any of the foregoing exceptions and, therefore, both the business judgment rule and the provisions of the Declaration shield the defendants from liability.

¶ 80     Thus, although I agree with the majority's conclusion that Boucher was not required to demonstrate "state action" in order to state a claim, count I was nevertheless properly dismissed because its allegations of a relationship between Boucher's complaints about building management and the board's decision to cite him for violating section 23(e) of the Declaration were wholly conclusory and insufficient to overcome application of the business judgment rule. And given the detailed record before us developed after extensive discovery, any effort by Boucher to amend his complaint to include such factual allegations would be futile and, in my view, sanctionable. Therefore, I would affirm the judgment in favor of defendants on count I.

¶ 81     For the same reasons, I would affirm summary judgment in favor of defendants on count III, charging breaches of the board members' fiduciary duties. It is undisputed that the board received complaints regarding Boucher's conduct in August 2013, not to mention on numerous earlier occasions. One of the 2013 incidents was recorded on videotape and a board member who viewed the tape confirmed that Boucher appeared to be yelling and was visibly angry.[3] Nothing in the Act or the association's declaration required the board to hold a hearing during which sworn testimony was presented or provide Boucher, either in advance of or during the hearing, with "evidence" supporting the notices of violation. The board had the benefit of both sides of the story and decided that penalties against Boucher for both violations were warranted. There is simply no factual basis for Boucher's claims that board members did not fulfill their fiduciary duties to him.

¶ 82     The result reached by the majority invites courts of equity to become embroiled in the internal affairs of condominium associations. Central to Boucher's retaliatory conduct and breach of fiduciary duty claims is his contention that the notices of violation issued in August 2013 were "false." But because condominium associations are self-governed and because an association's declaration approved by unit owners is presumptively valid, courts should refrain from undertaking the task of resolving intramural disputes (which arise quite frequently in such organizations) between a unit owner and the board when the unit owner does not claim the association violated its own rules of procedure. In other words, if the unit owner does not allege a violation of the process for assessing a fine or penalty, a court should decline to become involved in determining whether grounds for the penalty existed. Indeed, were courts

---

[3]Boucher obtained a copy of the videotape in discovery in this case and has not disputed the Board member's characterization.

required to referee internal disputes that arise in condominium associations, they would have time for little else.

¶ 83        This is not a case in which the board's interpretation of the declaration or its rules and regulations has resulted in infringement of a unit owner's constitutional rights. See *Shoreline Towers Condominium Ass'n v. Gassman*, 404 Ill. App. 3d 1013, 1014-15 (2010) (condominium board interpreted association rule prohibiting unit owners from placing personal objects of any sort in the common areas to allow association to repeatedly remove religious symbol affixed to front doorframe of unit). The fines against Boucher did not prevent him from complaining to anyone about issues in the building, and Boucher did not present any evidence to the trial court that the fines had dissuaded him from doing so. If Boucher's complaint is sufficient to state a claim for retaliatory conduct by the board, then all a problem unit owner need do is allege that the *real* reason he is being fined is not because he has, in fact, violated the association's declaration or rules, but because he is a complainer, *i.e.*, because he exercised his first amendment rights. We should hesitate to recognize such spurious claims, as they burden associations with costly litigation, which must be borne by all unit owners.

¶ 84        Boucher received all the process he was due. See 765 ILCS 605/18.4(*l*) (West 2012) (authorizing board to, *inter alia*, levy fines for violation of the declaration, by-laws, and rules and regulations of the association "after notice and an opportunity to be heard"). Boucher admitted that the notices apprised him of, and that he understood the basis for, the violations he was charged with. He was, as the notices of violations advised him, entitled to a hearing, which he was afforded. Although the video of the hearing is not part of the record, we must assume that Boucher, through his attorney, gave the board his version of events, a safe assumption since in his deposition Boucher testified he felt "violated" by his encounter with Campbell on the elevator, admitted he used "shit" to refer to his broken elevator fob and denied that he was otherwise abusive toward the building employee. Although he claims the board "concealed evidence" from him, as noted, nothing in the Act or the declaration entitles a unit owner to pre-hearing discovery or otherwise obligates a board to provide the unit owner anything other than notice and an opportunity to be heard. Accordingly, I believe the trial court properly entered summary judgment in favor of defendants on count III. Given that conclusion, it is unnecessary to resolve the additional issue of whether the association is directly or vicariously liable for board members' breaches of fiduciary duty.

¶ 85        The trial court also properly entered summary judgment in defendants' favor on count II, regarding Boucher's request for a copy of the videotape of the October 4, 2013, hearing. The hearing held on October 4, 2013, was convened at Boucher's request. It was not a board meeting. No notice of a board meeting was provided to unit owners and no agenda was prepared. Nothing in the Act, the association's declaration, or its rules and regulations requires every board member to attend a hearing requested by a unit owner regarding a notice of violation and proposed fine. The fact that all board members attended the hearing, either in person or telephonically, cannot transform a hearing held at a unit owner's request to address an issue pertaining only to that unit owner into a board meeting. By the same token, the fact that the board decided (but was not obligated) to videotape the hearing does not serve to render the videotape the functional equivalent of "minutes" required to be kept under the Act. Simply put, the videotape of Boucher's hearing does not fall into any of the categories of association records to which unit owners are entitled under section 19(a)(4) of the Act. 765 ILCS 605/19(a)(4) (West 2012).

¶ 86    I would affirm the orders appealed from in their entirety and, therefore, respectfully dissent.